**FERRARA LAW GROUP, P.C.**
Ralph P. Ferrara, Esquire (ID #024521985)
Kevin J. Kotch (ID #050341993)
50 W. State Street, Suite 1100
Trenton, New Jersey 08608
P: (609) 571-3738
F: (609) 498-7440
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARK DANIEL HOSPITALITY LLC (d/b/a INC)** | NO. 3:20-cv-06772-FLW-TJB |
| *Plaintiff,* | |
| v. | |
| **AMGUARD INSURANCE COMPANY** | |
| *Defendant.* | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES.......................................................................... ii

INTRODUCTION.......................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 3

ARGUMENT ................................................................................................. 4

I.      Coverage Is Not Barred By The Virus Exclusion............................. 6

II.     Plaintiff Suffered Loss Or Damage At Its Restaurant And May Recover
        Business Income And Extra Expense ............................................. 10

III.    Plaintiff Has Alleged An Action For Declaratory Relief For Civil Authority
        Coverage.......................................................................................... 16

IV.     Plaintiff Should Be Permitted Leave To Amend The Complaint................. 19

CONCLUSION ............................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc., No. 99–185 TUC ACM, 2000 WL 726789 (D. Ariz. 2000)..................................................................... 14

Arthur v. Maersk, Inc., 434 F.3d 196 (3d Cir. 2006) ............................................... 20

Arthur Anderson LLP v. Federal Ins. Co., 416 N.J. Super. 334 (N.J. App. Div. 2010)............................................................................... 14, 15

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................. 4, 5

Assurance Co. of Am. v. BBB Serv. Co., 593 S.Ed.2d 7 (Ga. Ct. App. 2003) ...... 19

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)...................................................... 5

Boileau v. Bethlehem Steel Corp. 730 F.2d 929 (3d Cir. 1984)............................... 20

Canopius U.S. Ins., Inc. v. Graham Trucking, LLC, No. 17-Civ-4616, 2018 WL 1757028 (D.N.J. Apr. 12, 2018) ...................................................... 6

Conley v. Gibson, 355 U.S. 41 (1957)....................................................................... 5

Customized Distribution Services v. Zurich Ins. Co., 373 N.J. Super. 480, 462 A.2d 560 (App. Div. 2004) ...................................................................... 12, 13

Dickie Brennan & Co., Inc. v. Lexington Ins. Co., 636 F.3d 683 (5th Cir. 2011) . 18

Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).................................... 21

Doto v. Russo, 140 N.J. 544, 659 A.2d 1371 (1995)............................................... 11

Farmers Alliance Mut. Ins. Co. v. Dilbeck, No. CIV–09–552–M, 2010 WL 545859 (W.D. Okla. Feb. 9, 2010)............................................................................ 16

Farmers Ins. Co. of Or. v. Trutanich, 858 P.2d 1332 (Or. Ct. App. 1993)............. 14

Foman v. Davis, 371 U.S. 178 (1962)...................................................................... 20

54th Street Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co., 306 A.D.2d 67
  (N.Y. App. Div. 2003) ................................................................. 18

5 Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co., 208 N.W.2d 569
  (Mich. Ct. App. 1973) ................................................................. 19

Franklin v. Fin. Freedom Acquisition, LLC, 2014 U.S. Dist. LEXIS 44308
  (D.N.J. Apr. 1, 2014) .................................................................... 4

Gares v. Willingboro Twsp., 90 F.3d 720 (3d Cir. 1996) ........................................ 13

General Ceramics Inc. v. Fireman's Fund Ins. Cos., 66 F.3d 647
  (3d Cir. 1995) .......................................................................... 7

Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) ............................. 21

Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., Civ. A. No. 2:12-cv-
  04418 (WHW) (CLW), 2014 WL 6675934 (D.N.J. Nov. 24, 2014) ............ 13

Harry's Cadillac-Pontiac-GMC Truck Co., 486 S.E.2d 249
  (N.C. Ct. App. 1997) ................................................................. 15

Hemispherx Biopharma, Inc. v. Valley Forge Ins. Co., No. 12-Civ-1174, 2013 WL
  12129389 (D.N.J. Sept. 1, 2013) .................................................. 6

Howard Berger Co. v. Liberty Mut. Fire Ins., No. 14-Civ-06592, 2017 WL
  2256960 (D.N.J. May 23, 2017) ................................................... 6

In re Tower Air, Inc., 416 F.3d 229 (3d Cir. 2005) ............................................. 4, 5

Johnston v. N.J. State Parole Bd. Chairperson, Civ. A. No. 10-4339 (FLW),
  2011 WL 773232 (D.N.J.  Feb. 28, 2011) ..................................... 21

Kievit v. Loyal Protective Life Ins. Co., 34 N.J 475, 170 A.2d 22 (1961) ............. 12

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993) ........................................... 4

Lutsky v. Monmouth Marine Engines, Inc., 2014 U.S. Dist. LEXIS 17241
  (D.N.J. Feb. 10, 2014) ............................................................... 20

Mama Jo's, Inc. v. Sparta Ins. Co., Case No. 17-cv-23362-KMM, 2018 WL
    3412974 (S.D. Fl. June 11, 2018) ................................................................. 15

Maritime Park, LLC v. Nova Cas. Co., No. A-3554-17T2, 2019 WL 1422918
    (N.J. App. Div. Mar. 29, 2019) .................................................................... 17

McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009) ................................... 5

Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 503 A.2d  (1986) ...................... 11

Mellin v. Northern Security Ins. Co., 115 A.3d 799 (N.H. 2015) ........................... 13

Morton Int'l Inc. v. General Accident Ins. Co. of Am., 134 N.J. 1, 629 A.2d 831
    (1993) ........................................................................................................ 7, 8

Motorists Mut. Ins. Co. v. Hardinger, 131 F. Appx. 823 (3d Cir. 2005) ............... 13

MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co., 187 Cal. App.
    4th 766 (Ct. App. 2d Dist. 2010) ................................................................. 15

Mulheron v. Philadelphia Eagles, No. 12-1753 MAS TJB, 2013 WL 211349
    (D.N.J. Jan. 18, 2013) .................................................................................. 4

Murray v. State Farm Fire and Cas. Co., 509 S.E.2d 1 (W. Vir. 1998) .................. 14

Narricot Indus., Inc. v. Fireman's Fund Ins. Co., 2002 WL 31247972
    (E.D. Pa. 2002) ........................................................................................... 19

Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d
    323 (S.D.N.Y. 2014) .................................................................................... 15

Performance Ins. Co. v. Jones, 185 N.J. 406, 887 A.2d 146 (2005) ......................... 7

Phillips v. Cty. of Allegheny, 515 F.3d 224 (3d Cir. 2008) ...................................... 5

Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226
    (3d Cir. 2002) .............................................................................................. 14

Prime Hookah, Inc.v. Discount Smoking Products, Inc., Civ. A. No. 18-15600
(SRC), 2019 WL 1650100 (D.N.J. Apr. 17, 2019).......................................... 4

Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 698 A.2d 9 (1997) ...................... 11

Roundabout Theatre Co. v. Continental Cas. Co., 751 N.Y.S.2d 4
(N.Y. App. Div. 2002) ................................................................. 15

Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247
(7th Cir. 1994).......................................................................... 5

Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am., No. A-0170-15T1, 2017
WL 1731005 (N.J. App. Div. May 3, 2017)........................................... 6, 18

Schmidt v. Smith, 155 N.J. 44, 713 A.2d 1014 (1998)............................................ 7

Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000)....................................................... 21

Sloan v. Phoenix of Hartford Ins. Co., 207 N.W.2d 434 (Mich. Ct. App. 1973) ... 17

Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd. ................................................. 15

Syufy Enters. v. Home Ins. Co. of Ind., No. 94-Civ-756, 1995 WL 129229
(N.D. Cal. Mar. 21, 1995) ............................................................. 17

Thibault v. Delaware Technical & Community College, 2012 WL 2073847
(D. Del. June 8, 2012) ................................................................... 4

United Air Lines, Inc. v. Ins. Co. of State of Pa., 439 F.3d 128 (2d Cir. 2006)..... 18

Wakefern Food Corp. v. Liberty Mut. Ins. Co., 406 N.J. Super. 524, 968 A.2d 724
(App. Div. 2009) ................................................................. 11, 13

Western Fire Ins. Co. v. First Presbyterian Church, 437 P.2d 52 (Colo. 1968) ..... 14

Zacarias v. Allstate Ins. Co., 168 N.J. 590 (2001) ............................................. 6, 11

## **Statutes and Rules**

Fed. R. Civ. P. 8 ................................................................. 16, 21

Fed. R. Civ. P. 12 ................................................................................... 4, 16

Fed. R. Civ. P. 15 ...................................................................................... 20

New Jersey Court Rule 1.36-3 ............................................................... 17

Plaintiff Mark Daniel Hospitality LLC (d/b/a INC) ("Plaintiff" or "INC") submits this memorandum in opposition to AmGUARD Insurance Company's ("Defendant" or "AmGUARD") Motion to Dismiss and in support of its cross-motion for leave to amend.

## **INTRODUCTION**

Plaintiff operates a sit-down restaurant and whisky bar which was forced to close when Governor Murphy entered an order banning onsite dining in New Jersey. Like many small businesses throughout the state, the impact has been devastating. Plaintiff seeks coverage from AmGUARD under the business interruption coverage it purchased and for which it paid a premium. This will likely be the only time that Plaintiff and other small businesses will need this coverage. Instead of paying, the insurers are uniformly looking for ways to avoid coverage.

Initially, this case should be remanded to New Jersey state court where it was originally filed. Plaintiff filed a motion to remand which is still pending. This case involves solely state insurance law issues which should be resolved in state court. The court should resolve the jurisdictional issues presented by the motion to remand before addressing the other pending motions.

None of the substantive reasons advanced by AmGUARD provide a basis to dismiss this case on the merits. The virus exclusion in the policy does not apply as

1

Plaintiff's losses flow from the Governor's Order, and not the virus. AmGUARD is also barred from relying on the exclusion as it violates public policy under the regulatory estoppel doctrine.

Plaintiff has alleged loss or damage triggering business income and extra expense coverage. Cases throughout the country have found that physical loss or damage occurs where the insured's premises are rendered unusable for its intended use even though the property has suffered no tangible change. And courts in New Jersey have found the terms "physical loss" and "physical damage" ambiguous in a number of cases.

Finally, Plaintiff has pled its cause of action for declaratory relief, including relief under the Civil Authority coverage. All that is required is plaintiff provide sufficient facts to place defendant on notice of the claims against it. Plaintiff is not required to litigate the claim in its Complaint. Plaintiff has pled the nature of the insurance coverage dispute and the Orders of the Governor which have caused Plaintiff's loss. Defendant is on notice of the nature of the claims.

In the event that the Court denies Plaintiff's motion to remand, Plaintiff requests leave to amend the complaint to include specific allegations supporting the public policy / regulatory estoppel claim, to plead in the alternative loss caused by the virus and to correct any alleged deficiencies in the complaint, including that the state court complaint does not meet federal pleading standards.

2

## **FACTUAL BACKGROUND**

Plaintiff INC runs INC American Bar & Kitchen, an upscale sit down restaurant and whiskey bar, in New Brunswick, New Jersey. Complaint ¶ 18. In March 2020, the New Jersey Governor Philip Murphy entered several executive orders which, among other things, prohibited restaurants from having any dining in their premises. Complaint ¶ 13. As a result of the Orders, Plaintiff cannot use its restaurant space and was forced to close. Complaint ¶ 19. Plaintiff has suffered a substantial loss of business and income. Id. The closure is a result of the Orders which are physically impacting Plaintiff's business. Complaint ¶ 21.

Plaintiff has businessowner's insurance with defendant AmGUARD for the period November 24, 2019 through November 24, 2020 (hereinafter the "Policy"). Complaint ¶ 6. The Policy is an "all risk policy," which covers all risks unless clearly and specifically excluded. Complaint ¶ 10. The Policy includes business interruption coverage, including coverage for business income, extra expense and loss resulting from civil authority. Complaint ¶ 9.

Plaintiff filed a declaratory judgment action in the Superior Court of New Jersey, Mercer County. Plaintiff seeks a declaration of, among other things, that AmGUARD has obligation to provide business interruption, extra expense and civil authority coverage and that the virus exclusion in the Policy does not apply to Plaintiff's loss. Complaint ¶ 27.

3

Defendant AmGUARD removed this action to federal court and has now filed a motion to dismiss the action.  Plaintiff filed a motion to remand this case to New Jersey state court, and that motion is pending.[1]

## **ARGUMENT**

"Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted."  Franklin v. Fin. Freedom Acquisition, LLC, 2014 U.S. Dist. LEXIS 44308, at *8 (D.N.J. Apr. 1, 2014).  "The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case."  Thibault v. Delaware Technical & Community College, 2012 WL 2073847, at *1 (D. Del. June 8, 2012) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion.  Mulheron v. Philadelphia Eagles, No. 12-1753 MAS TJB, 2013 WL 211349, at *4 (D.N.J. Jan. 18, 2013).

"First, the court must 'take note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  In doing so, however, the Court should be mindful "a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts."  In re Tower Air, Inc.,

---

[1] The Court should resolve the motion to remand before deciding the other motions.  See Prime Hookah, Inc.v. Discount Smoking Products, Inc., Civ. A. No. 18-15600 (SRC), 2019 WL 1650100, at *3-4 & n.3 (D.N.J. Apr. 17, 2019) (noting that without jurisdiction, the court could not decide the Rule 12(b)(6) motion).

4

416 F.3d 229, 237 (3d Cir. 2005). Rather, "supporting facts should be alleged, but only those necessary to provide the defendant fair notice of the plaintiff's claim and the 'grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41 (1957)); see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.").

Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. Mulheron, 2013 WL 211349, at *4. Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The plausibility requirement "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)); see also McTernan v. City of York, PA, 564 F.3d 636, 646 (3d Cir. 2009) ("A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.").

## I.  <u>Coverage Is Not Barred By The Virus Exclusion</u>.

Coverage is not barred by the virus exclusion.  Plaintiff alleges that the Governor's Orders, and not the presence of COVID-19 caused the loss at its restaurant.  Moreover, AmGUARD is barred from relying on the virus exclusion by the regulatory estoppel doctrine.

A motion to dismiss is a decision based on the allegations in the Complaint. Plaintiff has alleged that the Governor's Orders were the cause of its business loss. <u>See</u> Complaint ¶ 19 ("As a result of the Orders, Plaintiff cannot use the restaurant space and was forced to close."); <u>id</u>. ¶ 21 ("The Orders are physically impacting Plaintiff [and have caused] physical loss and damage...."). The cases AmGUARD relies on for dismissing a case based on an insurance policy exclusion are all summary judgment cases, which turn on the factual record and not the pleading. Defendant's Brief at 6-7.[2]  Here, the allegations in the complaint control, which include that the Governor's Orders, and not the presence of virus in Plaintiff's restaurant, caused the loss. <u>See</u> Defendant's Brief at 9 n.5 ("Plaintiff expressly

---

[2] <u>Canopius U.S. Ins., Inc. v. Graham Trucking, LLC</u>, No. 17-Civ-4616, 2018 WL 1757028, at *1 (D.N.J. Apr. 12, 2018) (summary judgment); <u>Howard Berger Co. v. Liberty Mut. Fire Ins.</u>, No. 14-Civ-06592, 2017 WL 2256960, at *1 (D.N.J. May 23, 2017) (summary judgment); <u>Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.</u>, No. A-0170-15T1, 2017 WL 1731005, at *1 (N.J. App. Div. May 3, 2017) (summary judgment); <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 594 (2001) (summary judgment); <u>Hemispherx Biopharma, Inc. v. Valley Forge Ins. Co.</u>, No. 12-Civ-1174, 2013 WL 12129389, at *2 (D.N.J. Sept. 1, 2013) (summary judgment).

disavows any claim that its premises were somehow contaminated by the virus.")
(citing Complaint ¶ 28). The virus exclusion does not apply.

Plaintiff has also alleged that the virus exclusion is void as it violates public policy. Complaint ¶ 27(g). New Jersey courts routinely strike insurance clauses that violate public policy. See Performance Ins. Co. v. Jones, 185 N.J. 406, 887 A.2d 146 (2005); Schmidt v. Smith, 155 N.J. 44, 713 A.2d 1014 (1998) (exclusion in workers' compensation policy). The New Jersey courts recognize regulatory estoppel, that is an insurer is precluded from relying on a change in the insurance policy where regulatory approval was obtained through a misrepresentation. Morton Int'l Inc. v. General Accident Ins. Co. of Am., 134 N.J. 1, 629 A.2d 831 (1993). This doctrine protects "New Jersey's insureds and [promotes] honesty before the state's regulatory agencies...." General Ceramics Inc. v. Fireman's Fund Ins. Cos., 66 F.3d 647, 657 (3d Cir. 1995). In Morton, the New Jersey Supreme Court adopted regulatory estoppel and refused to give effect to the literal meaning of the pollution exclusion. The Court explained:

> The critical issue is whether the courts of this state should give effect
> to the literal meaning of an exclusionary clause that materially and
> dramatically reduces the coverage previously available for property
> damage caused by pollution, under circumstances in which the
> approval of the exclusionary clause by state regulatory agencies was
> induced by the insurance agency's representation that the clause
> merely "clarified" the scope of prior coverage.

7

Morton, 629 A.2d at 872.   The Court also noted that the insurers avoided a reduction in premiums for this reduction in coverage.  Id.

The insurance industry, including defendant, are similarly barred by regulatory estoppel from relying on the virus exclusion.[3]  In 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

In their filings with various state regulators (including New Jersey), on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.  Specifically, in its "ISO Circular" dated July 6, 2006, and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

---

[3] These are the facts that support Plaintiff's allegation that the virus exclusion is void as against public policy.  As set forth below, Plaintiff requests leave to amend to include these allegations in the complaint.

Exhibit A, hereto.  The AAIS, in its "Filing Memorandum" in support of the Virus

Exclusion, represented:

> Property policies have not been, nor were they intended to be, a
> source of recovery for loss, cost or expense caused by disease-causing
> agents.  With the possibility of a pandemic, there is concern that
> claims may result in efforts to expand coverage to create recovery for
> loss where no coverage was originally intended....
>
> This endorsement clarifies that loss, cost, or expense caused by,
> resulting from, or relating to any virus, bacterium, or other
> microorganism that causes disease, illness, or physical distress or that
> is capable of causing disease, illness, or physical distress is
> excluded....

Exhibit B, hereto.

These representations by the insurance industry were false.  By 2006, when

the submissions were made, courts had repeatedly found that property insurance

policies covered claims involving disease-causing agents, and had held on

numerous occasions that any condition making it impossible to use property for its

intended use constituted "physical loss or damage to such property."

These assertions made by the insurance industry (including defendant) to

obtain regulatory approval for the Virus Exclusion were in fact misrepresentations

and for this reason, among other public policy concerns, insurers should now be

estopped from enforcing the Virus Exclusion to avoid coverage of claims related to

the COVID-19 pandemic.

In securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, the insurance industry effectively narrowed the scope of the insurance policy without a commensurate reduction in premiums charged. Under the doctrine of regulatory estoppel, the Court should not permit the insurance industry to benefit from this type of duplicitous conduct before the state regulators.

## II. Plaintiff Suffered Loss Or Damage At Its Restaurant And May Recover Business Income And Extra Expense.

Plaintiff has suffered covered loss or damage as a result of the closure of its business based on the Governor's Orders. The Orders have made Plaintiff's location unusable as a sit down restaurant, its insured purpose. This stoppage is the very type of fortuitous event for which it purchased business interruption insurance.

The Policy provides for the following business income coverage:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Businessowner's Coverage Form, Section I.A.4.f (Leming Declaration, Amended Exhibit A, at A4) (Docket No. 9). The Policy defines Covered Causes of Loss as not only actual losses but also the "[r]isks of direct physical loss...." Id., Section

10

I.A.3 (Leming Declaration, Amended Exhibit A, at A3) (Docket No. 9).  With
respect to Extra Expense, the Policy provides:

> We will pay necessary Extra Expense you incur during the "period of
> restoration" that you would not have incurred if there had been no
> direct physical loss or damage to property at the described premises.
> The loss or damage must be caused by or result from a Covered Cause
> of Loss.

Id., Section I.A.4.g.

An insurance policy is not an ordinary contract but a "'contract of adhesion
between parties who are not equally situated.'"  Doto v. Russo, 140 N.J. 544, 555,
659 A.2d 1371 (1995) (quoting Meier v. New Jersey Life Ins. Co., 101 N.J. 597,
611, 503 A.2d 862 (1986)).  Where the language of an insurance policy supports
more than one meaning, the courts should "interpret the contract to comport with
the reasonable expectations of the insured."  Zacarias v. Allstate Ins. Co., 168 N.J.
590, 595, 775 A.l2d 1262 (2001).  "[P]olicy exclusions must be narrowly
construed; [and] the burden is on the insurer to bring the case within the
exclusion."  Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997).

The New Jersey courts have found the terms "physical damage" and
"physical loss" ambiguous in numerous cases.  For example, in Wakefern Food
Corp. v. Liberty Mut. Ins. Co., 406 N.J. Super. 524, 968 A.2d 724 (App. Div.
2009), the Appellate Division found the undefined term "physical damage" was
ambiguous.  The court noted that:

> [I]t is well settled that those purchasing insurance "should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'

406 N.J. Super. at 733-34 (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)).   The insured grocery store chain was seeking coverage for losses related to a blackout.  The Appellate Division found there was coverage even though the electricity grid may have operated as intended in shutting down.  From the perspective of the public, it was incapable of delivering electricity and thus appeared physically damaged.   In another case, Customized Distribution Services v. Zurich Ins. Co., 373 N.J. Super. 480, 862 A.2d 560 (App. Div. 2004), the insured warehouse had shipped bottled beverages out of rotation which resulted in some of the beverage being kept in its warehouse too close to the printed expiration date to be sold in the regular market.  It had to be sold in the secondary market at a discount.  The court found that this constituted a "physical loss" even though the material composition of the beverage had not changed.  The change was in "how the product was perceived by … customers as a result of an undue passage of time."   The court noted that "[s]ince 'physical' can mean more than material alteration or damage, it was incumbent on the insurer to clearly and specifically rule out coverage in the circumstances where it was not to be provided,

12

something that did not occur here." <u>Customized Distribution</u>, 373 N.J. Super. at 491.[4]

Courts throughout the country have recognized that an insured suffers physical loss or damage where its property is rendered uninhabitable or unusable for its intended use even though the property had suffered no tangible change.[5] <u>See</u> <u>Mellin v. Northern Security Ins. Co.</u>, 115 A.3d 799 (N.H. 2015) (insured suffered covered loss where condominium unit was uninhabitable due to cat odor coming from another unit even though there was no tangible physical alteration to their unit); <u>Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, Civ. A. No. 2:12-cv-04418 (WHW) (CLW), 2014 WL 6675934 (D.N.J. Nov. 24, 2014) (release of ammonia temporarily incapacitated the facility); <u>Motorists Mut. Ins. Co. v. Hardinger</u>, 131 F. Appx. 823 (3d Cir. 2005) (ecoli bacteria in well was a "direct

---

[4] This is not an issue to be resolved on the face of the complaint but requires discovery regarding the nature of the claim, the nature of the harm and the insured's reasonable expectations. <u>See</u> <u>Wakefern</u>, 406 N.J. Super. at 729-33 (summary judgment); <u>Customized Distribution</u>, 373 N.J. Super. at 485-87 (summary judgment).

[5] There is no New Jersey Supreme Court case on point on this issue. As a result, this Court must predict New Jersey law, which is another reason this declaratory judgment action should be remanded. When deciding a case under state law, this court must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issue before [the court.]" <u>Gares v. Willingboro Twsp.</u>, 90 F.3d 720, 725 (3d Cir. 1996). If there are no state supreme court cases on point, the court should look to the "state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." <u>Id</u>.

physical loss or risk of physical loss" to the home where the functionality of the home "was nearly eliminated or destroyed" or the property was made useless or uninhabitable); Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc., No. 99–185 TUC ACM, 2000 WL 726789, at *2 (D. Ariz. 2000) ("'physical damage' is not restricted to the physical destruction or harm of computer circuitry but includes loss of access, loss of use, and loss of functionality."); Murray v. State Farm Fire and Cas. Co., 509 S.E.2d 1, 17 (W. Vir. 1998) (where homes were at risk of a rock or boulder slide, "[l]osses [were] covered by the policy, including those rendering the property unusable or uninhabitable, may exist in the absence of structural damage to the insured property"); Farmers Ins. Co. of Or. v. Trutanich, 858 P.2d 1332 (Or. Ct. App. 1993) (odor from methamphetamine cooking represented direct physical loss covered by the policy); Western Fire Ins. Co. v. First Presbyterian Church, 437 P.2d 52 (Colo. 1968) (presence of gasoline in ground around and under church made it uninhabitable and making further use dangerous).  Under this caselaw, an insured has business interruption and extra expense coverage where the insured's property is rendered unusable for its insured purpose.[6]

The cases relied on by Defendant do not justify dismissing this action. Arthur Anderson LLP v. Federal Ins. Co., 416 N.J. Super. 334, 248 (N.J. App. Div.

---

[6] See also Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 232 (3d Cir. 2002) (addressing terms in an asbestos in buildings property loss and not business interruption claim).

2010), a case decided on summary judgment, is inapplicable. It involved a different type of insurance, contingent business interruption, which is based on disruption of its vendors. Arthur Anderson's claim was that it lost money post 9-11 and cited the damage to the World Trade Center and the Pentagon. Arthur Anderson did not contend that any of its locations or its vendors' locations were damaged or unusable. Several cases deal with hindered access to an insured property and not whether property was usable for its intended purpose. See Harry's Cadillac-Pontiac-GMC Truck Co., 486 S.E.2d 249 (N.C. Ct. App. 1997) (roads leading to car dealership closed due to a snowstorm); Roundabout Theatre Co. v. Continental Cas. Co., 751 N.Y.S.2d 4 (N.Y. App. Div. 2002) (order closed road near the theater and not the theater); see also Mama Jo's, Inc. v. Sparta Ins. Co., Case No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fl. June 11, 2018) (no coverage for loss caused by construction dust because restaurant remained open every day and customers were always able to access the restaurant).[7]

---

[7] The other cases cited by Defendant are equally inapplicable. Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323 (S.D.N.Y. 2014) was decided under New York law and involved a loss of power to an office building. The court noted that "access to the building was not formally blocked." Id. at 325. MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co., 187 Cal. App. 4th 766 (Ct. App. 2d Dist. 2010), involved a claim of damage to an MRI, but the court noted that there was no coverage as the claimed "damage" was part of the normal procedure for turning off and turning on the machine. Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd., involved New York law in the context of a request for an injunction. There was no decision on the ultimate merits of the insured's claim.

Plaintiff has alleged that its restaurant was rendered unusable as result of the Governor's Orders. Here, plaintiff operates INC a sit down restaurant and whisky bar. Complaint ¶ 18. AmGUARD insured the property for use as a restaurant. See Leming Decl., Amended Exh. A, at A1 (acknowledging business as "Full-Service Restaurants"). As a result of the Governor's Orders, the property was no longer usable for a sit down restaurant (Complaint ¶¶ 13, 18-19), that is, it suffered covered physical loss or damage.

As set forth in Point I above, Defendant is estopped from asserting the virus exclusion in its Policy. As a result, damage or risk of damage caused by a virus would be a covered loss. Plaintiff requests leave to amend the complaint to allege, in the alternative, that Plaintiff's loss or damage was the result of the virus. See Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) (permitting inconsistent claims or defenses).

## III.   Plaintiff Has Alleged An Action For Declaratory Relief For Civil Authority Coverage.

In the complaint filed in state court, Plaintiff alleged a declaratory judgment claim seeking civil authority coverage. To satisfy Rule 12(b)(6), a declaratory judgment complaint need only set forth the nature of the dispute between the parties. Farmers Alliance Mut. Ins. Co. v. Dilbeck, No. CIV–09–552–M, 2010 WL 545859 (W.D. Okla. Feb. 9, 2010). Rule 12(b)(6) is not the place to argue the

ultimate merits of the claim. Defendant seeks to dismiss the civil authority claim relying not on caselaw regarding the sufficiency of the pleadings, but whether Plaintiff may ultimately prevail on a motion for summary judgment. None of these arguments have merit. However, should the Court deem that Plaintiff's pleading is somehow deficient, Plaintiff should be permitted leave to amend.

Defendant's contention that Plaintiff has not alleged "damage" to any "property" is without merit.[8] As set forth in Point II, Plaintiff has alleged damage to its property and statewide orders which would have similar impact on other business. Courts have recognized that there is civil authority coverage resulting from the compliance with governor's executive orders. See Sloan v. Phoenix of Hartford Ins. Co., 207 N.W.2d 434 (Mich. Ct. App. 1973) (civil authority coverage for movie theaters' losses resulting from compliance with governor's executive order which, during riots, imposed curfew and closed places of amusement). Moreover, Plaintiff is seeking leave to amend to plead, in the alternative, that there was damage caused by the presence of the virus. Numerous authorities have recognized that this causes physical loss and damage. See, e.g., New York City

---

[8] Maritime Park, LLC v. Nova Cas. Co., No. A-3554-17T2, 2019 WL 1422918 (N.J. App. Div. Mar. 29, 2019) (summary judgment) (N.J. Court R. 1:36-3 provides unpublished opinions are not precedent and may not be cited to any court without providing a copy and certifying that counsel is not aware of any contrary unpublished opinions); Syufy Enters. v. Home Ins. Co. of Ind., No. 94-Civ-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) (summary judgment).

Executive Order, March 16, 2020 ("[COVID-19] physically is causing property loss and damage.").[9]

Defendant also argues that Plaintiff cannot maintain a civil authority action because Plaintiff has not alleged that orders were in response to damage. Plaintiff has alleged the damage resulting in the Orders and, as already discussed, is seeking leave to amend to include allegations relating the presence of the virus. This is more than sufficient to support Plaintiff's request for declaratory relief.[10]

Defendant argues that Plaintiff cannot maintain civil authority coverage because the action of the civil authority did not prohibit access to the restaurant. On this point, the allegations in the complaint must govern on a motion to dismiss.[11] Plaintiff has alleged that it operated a sit down restaurant, that the Governor's Executive Order prohibited sit-down customers' access to the

---

[9] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf.

[10] Once again, Defendant relies only on summary judgment cases which simply do not address the sufficiency of the pleadings. See United Air Lines, Inc. v. Ins. Co. of State of Pa., 439 F.3d 128 (2d Cir. 2006) (summary judgment); Dickie Brennan & Co., Inc. v. Lexington Ins. Co., 636 F.3d 683 (5th Cir. 2011) (summary judgment).

[11] The cases Defendant relies on were decided on motions for summary judgment. Schultz Furriers, Inc. v. Travelers Cas. Ins. Co., Docket No. A-0170-15T1, 2017 WL 1731005 (N.J. App. Div. May 3, 2017) (summary judgment based on testimony including concessions by the party); 54th Street Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co., 306 A.D.2d 67 (N.Y. App. Div. 2003) (summary judgment granted while noting restaurant was accessible to the public).

restaurant and, as a result, the restaurant was closed.[12]   Complaint ¶¶ 13, 18-19. The insurance policy does not define the term "access".   The Policy does not specify whether the prohibition to access must be complete.   Here, the prohibition on access closed Plaintiff's business, which is the very risk that was being insured. Any ambiguity must be read in favor of the insured.

As set forth in Point I above, Defendant is estopped from asserting the virus exclusion in its Policy.   As a result, damage or risk of damage caused by a virus would be a covered loss.   Plaintiff requests leave to amend the complaint to allege, in the alternative, that Plaintiff's loss or damage was the result of the virus.   See Fed. R. Civ. P. 8(d) (permitting inconsistent pleading and pleading in the alternative).

## IV.   Plaintiff Should Be Permitted Leave To Amend The Complaint.

In the event that this case is not remanded, Plaintiff requests leave to amend the complaint to include specific allegations regarding regulator estoppel, alternate

---

[12] Courts have held that access to an insured's premises is "prohibited" where the order or action of civil authority actually requires the insured's business premises to close, thereby invoking coverage for business losses. See Assurance Co. of Am. v. BBB Serv. Co., 593 S.Ed.2d 7, 7-9 (Ga. Ct. App. 2003) (County order to evacuate as Hurricane Floyd approached required closure of plaintiff's restaurant, and coverage therefore existed under Civil Authority Clause); Narricot Indus., Inc. v. Fireman's Fund Ins. Co., 2002 WL 31247972, at *4 (E.D. Pa. 2002) (Order of town authorities directed plaintiff to suspend plant operations due to Hurricane Floyd); 5 Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co., 208 N.W.2d 569, 570 (Mich. Ct. App. 1973) (governor mandated closure of all places of amusement, including plaintiff's bowling alleys, restaurants, taverns and motels, due to rioting after assassination of Dr. Martin Luther King, Jr.).

19

theories of causation and address any other deficiencies raised by the AmGUARD's motion.

Rule 15 states that "leave to amend 'shall be freely given when justice so requires.'" Foman v. Davis, 371 U.S. 178, 182 (1962); see also Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires.").   Courts have routinely held that requests to amend pleadings should routinely be granted if the appropriate standard for leave to amend under Rule 15 is satisfied.   Id.   Moreover, Rule 15 reflects a "general presumption in favor of allowing a party to amend pleadings." Boileau v. Bethlehem Steel Corp. 730 F.2d 929, 938 (3d Circ. 1984).   "In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman, 371 U.S. at 182; see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."); Lutsky v. Monmouth Marine Engines, Inc., 2014 U.S. Dist. LEXIS 17241, * 4 (D.N.J. Feb. 10, 2014) ("The Third Circuit has adopted a liberal approach in applying Rule 15 to ensure that 'a particular

claim will be decided on the merits rather than on technicalities.'") (citing Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990)).

Moreover, "[A] court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility." Johnston v. N.J. State Parole Bd. Chairperson, Civ. A. No. 10-4339 (FLW), 2011 WL 773232, at *3 (D.N.J. Feb. 28, 2011) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 110–111 (3d Cir.2002) and Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000)).

Plaintiff should be permitted leave to amend. The regulatory estoppel theory is well established under New Jersey law and, as set forth above, there is a factual basis for its application here. In light of the regulatory estoppel theory, Plaintiff should also be permitted to amend the complaint to allege, in the alternative, that Plaintiff's losses were a result of the virus. Fed. R. Civ. P. 8(d).

<b>CONCLUSION</b>

For the reasons set forth above, this Court should deny Defendant's Motion to Dismiss and grant Plaintiff's Cross-Motion for leave to amend the complaint.

Respectfully submitted,

**FERRARA LAW GROUP, P.C.**

DATE: July 20, 2020        BY:   /s/ Ralph P. Ferrara
                                 RALPH P. FERRARA, ESQUIRE
                                 Attorney for Plaintiff Mark Daniel
                                 Hospitality LLC (d/b/a INC)

21