**FERRARA LAW GROUP, P.C.**
Ralph P. Ferrara, Esquire (ID #024521985)
Kevin J. Kotch (ID #050341993)
50 W. State Street, Suite 1100
Trenton, New Jersey 08608
P: (609) 571-3738
F: (609) 498-7440
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARK DANIEL HOSPITALITY LLC (d/b/a INC)** | NO. 3:20-cv-06772-FLW-TJB |
| *Plaintiff,* | |
| v. | |
| **AMGUARD INSURANCE COMPANY** | |
| *Defendant.* | |

## PLAINTIFF'S CITATION OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO REMAND AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Mark Daniel Hospitality LLC (d/b/a INC) respectfully submits the following Supplemental Authority in support of its Motion to Remand and in opposition to Defendant's Motion to Dismiss.

1.     The district courts in the Third Circuit have uniformly remanded declaratory judgment insurance coverage cases involving COVID-19 and business interruption insurance to the state courts from which those cases have been removed.

1

2.    In <u>Umami Pittsburgh, LLC d/b/a Umami v. Motorists Commercial Mutual Insurance Company</u>, No. 2:20-cv-00999-DSC (W.D Pa. Aug. 26, 2020), the court remanded the COVID-19 business interruption insurance coverage case finding that "[t]he COVID-19 pandemic, and the related governmental orders, raises novel business insurance coverage issues under Pennsylvania law.  Because such issues have not been addressed by the Commonwealth's highest court, any declaration of this Court as to the parties' rights under the insurance policy would be predicting how Pennsylvania courts would decide the COVID-19 coverage issues with little or no persuasive authority from the Pennsylvania state courts."  A true and correct copy of the decision is attached hereto as Exhibit A.

3.    In <u>Greg Prosmushkin, P.C. v. Hanover Insurance Group</u>, Civ. A. No. 20-2561, 2020 WL 4735498 (E.D. Pa. Aug. 14, 2020), the court remanded the COVID-19 business interruption insurance coverage case finding that "[t]he issues of state law, presented in Plaintiffs' action are novel, complex, and exceedingly important, creating a compelling public policy interest for these claims to be allowed to be decided by Pennsylvania courts."  <u>Id</u>. at *5.  With respect to a counterclaim regarding coverage for Plaintiff's New Jersey office, the court noted that "New Jersey was among the hardest hit states in the nation by COVID-19 and as such, their interest in deciding their own state law on this matter is similarly

strong." Id. at *5 n.4.  A true and correct copy of this decision is attached hereto as Exhibit B.

4.      In Dianoia's Eatery, LLC v. Motorists Mutual Insurance Company, Civ. A. No. 20-787 (W.D. Pa. Aug. 27, 2020), the court remanded the COVID-19 business interruption insurance coverage case finding that "the Commonwealth's interest in this and similar litigation is paramount such that a remand to state court is the appropriate course in this case." Id. at *4.  A true and correct copy of this decision is attached hereto as Exhibit C.

5.      In Studio 417, Inc. v. Cincinnati Insurance Company,  Case No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) (applying Missouri law), the district court denied the insurer's motion to dismiss the COVID-19 business interruption insurance coverage case involving claims for, among other things, lost business income and civil authority coverage.  The court noted that plaintiff alleged a covered loss and civil authority coverage by alleging the closure of its business due to the state closure orders.  Id. at *6-7.  A true and correct copy of this decision is attached hereto as Exhibit D.

Respectfully submitted,

**FERRARA LAW GROUP, P.C.**

DATE:  September 15, 2020         BY:   /s/ Ralph P. Ferrara
                                        RALPH P. FERRARA, ESQUIRE
                                        Attorney for Plaintiff Mark Daniel
                                        Hospitality LLC (d/b/a INC)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of September 2020, I caused a true and correct copy of the foregoing Supplemental Authority to be served via the Court's ECF on the following:

> Susan M. Leming, Esquire
> Brown & Connery, LLP
> 360 Haddon Avenue
> P.O. Box 539
> Westmont, New Jersey 08108

> BY:   /s/ Ralph P. Ferrara
> RALPH P. FERRARA, ESQUIRE
> Attorney for Plaintiff Mark Daniel
> Hospitality LLC (d/b/a INC)

4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UMAMI PITTSBURGH, LLC** d/b/a/<br>UMAMI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20cv999 |
| | ) | **Electronic Filing** |
| **MOTORISTS COMMERCIAL**<br>**MUTUAL INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

August 26, 2020

Plaintiff, Umami Pittsburgh, LLC ("Umami" or "Plaintiff"), has brought an action

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (the "Act") against

Defendant, Motorists Commercial Mutual Insurance Company ("Motorists" or "Defendant")

seeking a declaration that the policies of insurance issued by Defendant provide coverage for

losses, damages, and expenses caused by the COVID-19 pandemic and governmental Orders

related thereto. Plaintiff originally filed this action in the Court of Common Pleas of Allegheny

County, Pennsylvania. Defendant removed the action to this Court alleging diversity

jurisdiction[1]. Plaintiff has filed a Motion to Remand asking this Court to decline jurisdiction

over the Declaratory Judgment action and to remand the case to the Court of Common Pleas of

Allegheny County. Defendant has responded and the motion is now before the Court.

---

[1]	Defendants contend that removal is based upon the Court's nondiscretionary, original,
diversity jurisdiction because Plaintiff's Complaint "expressly alleges a 'breach of contract'
claim relative to first party property coverages that seeks money damages." Having read the
Complaint and Amended Complaint, the Court finds that Plaintiff seeks solely declaratory relief.

The Act does not mandate that federal district courts exercise jurisdiction over every declaratory judgment action. *See State Auto. Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). Rather, the Act provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, **may declare** the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014)(quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)). The Act, therefore, contemplates that district courts will exercise discretion in determining whether to entertain such actions.

Nonetheless, although the Act confers on district courts a "unique and substantial discretion," the exercise of that discretion must be "sound and reasoned." *Reifer v. Westport Ins. Corp.*, 751 F.3d at 139. The Act is commonly invoked by insurance companies "to seek a declaratory judgment on a purely state law matter" in federal court based on diversity subject matter jurisdiction. *Id.* at 141. In response to such cases, the Court of Appeals for the Third Circuit has previously observed that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Cos. v. Summy*, 234 F.3d at 136. Consequently, it became common practice for district courts "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer v. Westport Ins. Corp.*, 751 F.3d at 142. This principle is especially relevant because the interest of a state "in resolving its own law must not be given

2

short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum." *State Auto Ins. Cos. v. Summy*, 234 F.3d at 136. Moreover,

> [w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to "step back" and be "particularly reluctant" to exercise [ ] jurisdiction [under the Act]. . . . The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases."

*Reifer v. Westport Ins. Corp.*, 751 F.3d at 148 (citations omitted). Further, "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law." *State Auto Ins. Cos. v. Summy*, 234 F.3d at 135.

In *Reifer*, the Third Circuit instructed district courts to consider a non-exhaustive list of factors when determining whether to exercise jurisdiction over such declaratory judgment actions, including:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

> (2) the convenience of the parties;

> (3) the public interest in settlement of the uncertainty of obligation;

> (4) the availability and relative convenience of other remedies;

> (5) a general policy of restraint when the same issues are pending in a state court;

> (6) avoidance of duplicative litigation[2];

> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer v. Westport Ins. Corp.*, 751 F.3d at 146.

---

[2]     In this instance, there is no parallel state action.

The factor this Court finds to be relevant and determinative in this instance is the first factor: "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy." The COVID-19 pandemic, and the related governmental orders, raises novel business insurance coverage issues under Pennsylvania law. Because such issues have not been addressed by the Commonwealth's highest court, any declaration of this Court as to the parties' rights under the insurance policy would be predicting how Pennsylvania courts would decide the COVID-19 coverage issues with little or no persuasive authority from the Pennsylvania state courts. *See Reifer v. Westport Ins. Corp.*, 751 F.3d at 148. Therefore, this Court will decline to exercise its jurisdiction under the Act and remand this action to the Court of Common Pleas of Allegheny County.

Accordingly,

## ORDER OF COURT

AND NOW, this 26th day of August, 2020, upon consideration of the Motion to Remand (**Document No. 6**) filed on behalf of Plaintiff, Umami Pittsburgh, LLC, Defendant's response thereto, and the briefs filed in support thereof, in accordance with the Memorandum filed herewith,

IT IS HEREBY ORDERED that the Motion to Remand is **GRANTED** and this matter shall be **REMANDED** to the Court of Common Pleas of Allegheny County, forthwith.

IT IS FURTHER ORDERED that the Clerk of Courts mark this case CLOSED and serve a certified copy of this Order on the Prothonotary for the Court of Common Pleas of Allegheny County, forthwith.

s/ DAVID STEWART CERCONE
David Stewart Cercone
Senior United States District Judge

cc:     James C. Haggerty, Esquire

4



John P. Goodrich, Esquire
Jonathan Shub, Esquire
Scott B. Cooper, Esquire
Matthew A. Meyers, Esquire


(*Via CM/ECF Electronic Mail*)

# EXHIBIT B

2020 WL 4735498
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

GREG PROSMUSHKIN,
P.C.; Greg Prosmushkin; and,
Irina Prosmushkin, Plaintiffs,
v.
The HANOVER INSURANCE
GROUP, Defendant.

CIVIL ACTION NO. 20-2561
|
Filed 08/14/2020

**Attorneys and Law Firms**

Greg Prosmushkin, Law Offices of Greg Prosmushkin,
Philadelphia, PA, for Plaintiffs.

Greg Prosmushkin, Philadelphia, PA, pro se.

Christopher M. Jacobs, Henry M. Sneath, Houston Harbaugh
PC, Pittsburgh, PA, for Defendant.

**MEMORANDUM**

JONES, II, J.

### I. Introduction

**\*1** Plaintiffs commenced this Declaratory Judgment action
in the Philadelphia Court of Common Pleas on May 6, 2020,
seeking a determination that Defendant Hanover Insurance
Group[1] is responsible under an insurance policy entered into
by Plaintiffs and Defendant on January 20, 2020, for losses
Plaintiffs sustained as a result of the COVID-19 pandemic. On
June 1, 2020, Defendant removed the action to federal court
under 28 U.S.C. § 1441. Pursuant to 28 U.S.C. § 1332, this
Court has original jurisdiction over the controversy because
the parties are diverse. Plaintiff filed the instant Motion on
June 11, 2020, seeking remand to the Philadelphia Court of
Common Pleas pursuant to the discretion afforded to this
court by the Declaratory Judgment Act, 28 U.S.C. § 2201(a).
For the reasons set forth below, Plaintiffs' Motion shall be
granted.

### II. Factual Background

#### A. The Parties and the Policy

Plaintiff Greg Prosmushkin, P.C. is a law firm with offices
located in Philadelphia, Pennsylvania (Mot. Remand Ex. A
¶ 1, ECF No. 5-4.) Plaintiffs Greg Prosmushkin and Irina
Prosmushkin are co-owners of the law firm. (Mot. Remand
Ex. A ¶ 2, ECF No. 5-4.) Defendant Hanover is an insurer
with a principal place of business in Massachusetts. (Mot.
Remand Ex. A ¶ 3.) On or about January 20, 2020, Plaintiffs
and Defendant entered into an insurance contract effective
through January 20, 2021. (Def. Countercl. ¶ 17, ECF No.
4.) The policy provides coverage for, among other things,
"Business Income Losses" and "Extra Expenses." (Mot.
Remand A ¶¶ 4-8.) The policy also contains an exclusion for
losses due to viruses or bacteria. (Def. Countercl. ¶ 26, Pls.'
Resp. Def. Countercl. ¶ 37.)

#### B. The COVID-19 Pandemic and Related Losses

Plaintiffs claim they suffered losses from a reduction in
business due to the COVID-19 pandemic, as well as losses
from additional expenses incurred from having to disinfect
their offices. (Mot. Remand ¶ 1.) Plaintiffs further claim
their business was impacted by public health guidelines as well as
state and local government orders. (Mot. Remand ¶ 1.)

The CDC has issued various guidelines that limit the number
of people in gatherings, with its most strict guidelines
recommending against gatherings of 10 or more people.
(Mot. Remand Ex. A ¶ 13.) Much is still unknown about
the pathogen that causes COVID-19, but scientific evidence
suggests the virus can live for up to 28 days on surfaces of
objects or materials. (Mot. Remand Ex. A ¶ 14.) As a result
of the pandemic, officials at the state level in Pennsylvania,
as well as at the local level in Philadelphia, took a number of
steps to attempt to slow the spread of the virus.

On March 6, 2020, Pennsylvania Governor Tom Wolf issued
the first governmental acknowledgment of the crisis in
Pennsylvania with a Proclamation of Disaster Emergency.
(Mot. Remand Ex. A ¶ 16.) Ten days later, Philadelphia
Mayor Jim Kenney announced the closure of "non-essential
businesses," including law firms such as Plaintiffs', and
eventually completely prohibited their operation on March
22, 2020. (Mot. Remand Ex. A ¶¶ 17, 19.) Governor Wolf

subsequently ordered "non-life sustaining businesses," such as Plaintiffs' law firm, to close their physical premises. (Mot. Remand Ex. A ¶ 18.) Governor Wolf then issued a stay-at-home order for Philadelphia County (among other Pennsylvania counties) on March 23, 2020, which he extended to the entire state on April 1, 2020. (Mot. Remand Ex. A ¶¶ 20, 21.)

**\*2** Plaintiffs claim their losses stem from the necessary suspension of their in-person operations due to the orders of Governor Wolf and Mayor Kenney. (Mot. Remand Ex. A ¶¶ 31, 34.) They also claim losses due generally to the COVID-19 Pandemic. (Mot. Remand Ex. A ¶ 31, 34.) Plaintiffs submitted a claim to Defendant on March 30, 2020, for losses beginning on March 17, 2020. (Mot. Remand Ex. A ¶ 32.) On April 1, 2020, Defendant responded to the claim by advising Plaintiffs that no coverage was available for their losses. (Pls.' Resp. Def. Countercl. ¶¶ 15, 16.) Plaintiffs now seek a declaration stating that coverage is available from Defendant to Plaintiff for these losses under the insurance policy.

### III. Legal Standard

The Declaratory Judgment Act (hereinafter "DJA") states that federal courts "may declare the rights and other legal relations of any interested part seeking such declaration." 28 U.S.C. 2201(a). Declaratory judgment is an appropriate remedy when it will terminate the controversy giving rise to the proceeding. However, the DJA grants discretion to federal district courts, who have "no compulsion" to exercise their jurisdiction over cases seeking declaratory judgment. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("District courts possess discretion in determining whether and when to entertain an action under the DJA.").

Declaratory judgments are intended to "define the legal rights and obligations of the parties in anticipation of some future conduct" and are not meant to "simply proclaim that one party is liable to another." *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014). The Third Circuit has adopted the "independent claim" test to determine whether an action seeking declaratory relief may be separated from a claim for legal relief. *Rarick v. Federated Serv. Ins. Co.*, 852 F. 3d 223 (3d Cir. 2017). *Rarick* defines an independent claim as one which is "alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id.* at 228. If a Complaint

seeking declaratory judgment contains a legal claim that is independent, the district court has a "virtually unflagging obligation" to hear those claims, subject to the presence of "exceptional circumstances." *Id.* at 229 (quoting *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Where an action seeking declaratory relief does not contain an independent claim seeking legal relief, the discretion of the district court is broader. District courts must weigh a number of factors in deciding whether or not to exercise their jurisdiction over a case seeking declaratory judgment. One such consideration is "practicality and wise judicial administration." *State Auto Ins. Cos. v. Summy*, 234 F. 3d 131, 134 (3d Cir. 2000). Courts must also consider the proper relationship between federal and state courts, the likelihood that a federal court will be able to resolve the uncertainty of obligation that gave rise to the controversy, and the public interest in settlement of the uncertainty of obligation, among other factors. *Reifer v. Westport Ins. Corp.*, 751 F. 3d 129, 141 (3d Cir. 2014). Where the action presents novel, unsettled, and/or complex issues of state law, district courts should be particularly reluctant to exercise their jurisdiction. *Id.* "The fact that district courts are limited to predicting, rather than establishing state law requires serious consideration." *Id.* at 148.

### IV. Discussion

For purposes of the instant Motion, this Court must first determine whether the DJA applies to this action. If it does, the court must then determine whether or not to exercise its jurisdiction pursuant to the DJA. Upon doing so, this Court concludes that the DJA does in fact apply to the present case, and that the court should exercise its discretion under the DJA to remand the matter back to the Philadelphia County Court of Common Pleas.

### A. Applicability of the DJA

**\*3** The DJA states that courts "may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*" 28 U.S.C. § 2201 (emphasis added). Furthermore, Federal Rule of Civil Procedure 57 states that "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed.R.Civ.P. 57. Defendant claims Plaintiffs' action is in truth seeking legal,

rather than declaratory judgment. While Plaintiffs' Complaint contains factual allegations that could potentially amount to breach of contract, Plaintiffs do not bring a parallel breach of contract claim. The Third Circuit warns of legal claims that "masquerade as a declaratory judgment" in order to activate discretionary jurisdiction. *Reifer* at 137,. However, Plaintiffs' action is broader than Defendant's April 1, 2020 denial. Rather than alleging Defendant's denial was a breach of contract, Plaintiffs are seeking a more general declaration regarding their losses under an *ongoing* insurance policy caused by an *ongoing* pandemic. An action seeking declaratory judgment which would necessarily implicate payment by an insurer if the court finds that liability exists, does not automatically convert to a legal claim. *Id.* at 136. To use an example from this case, a legal claim "masquerading" as a declaratory claim would be one where Plaintiffs narrowly seek a declaration as to whether the April 1, 2020 denial by Defendant was proper. This would be a case which would have very obvious and specific damages attached to a declaration in Plaintiffs' favor, and as such, declaratory relief would be indistinguishable from legal relief. However, in this case, a broader declaration is sought by Plaintiffs regarding the rights and obligations of the parties for the entire duration of the insurance policy, as it continues to run simultaneously with the COVID-19 pandemic.

To further illustrate *Reifer*'s idea of a legal claim masquerading as a declaratory claim, there are some recent decisions from this district in which such was the case. In these cases, the insured brought a claim for declaratory judgment, as well as a claim for breach of contract. These parallel claims were based on the same fact pattern and revolved around a denial of coverage for an incident entirely in the past (in both cases, a vehicle accident). The court noted in *Butta v. GEICO Cas. Co.*, that "courts generally decline granting declaratory relief when the claim for declaratory judgment is *entirely duplicative of another claim in the cause of action.*" *Butta*, 400 F. Supp. 3d 225, 233 (E.D. Pa. Sept. 10, 2019) (emphasis added). This was reaffirmed by the court in *LM Gen. Ins. Co. v. Lebrun*, — F.Supp.3d —, —, 2020 WL 3574514, at *11 (E.D. Pa. July 1, 2020). These cases demonstrate that when declaratory claims are redundant with parallel claims for legal relief, the declaratory claims should be dismissed and the court should proceed on the legal claims. However, there is no parallel claim here. Defendant cannot create a cause of action from the fact pattern on behalf of Plaintiffs in order to avoid application of the DJA, just as Plaintiffs could not add a declaratory claim to a breach of contract action to ensure application of the DJA.

Defendant also relies on *Andela's* assertion that declaratory judgments are meant to be in anticipation of some future conduct. *Andela*, 569 F. App'x at 83. However, this also does not render the DJA inapplicable to this case. While some past conduct of Defendant is implicated in the Complaint in the form of its April 1, 2020 denial of Plaintiffs' claim, there is present and future conduct that would be impacted by a declaratory judgment in this case as well. The insurance policy is ongoing through January 20, 2021, and the COVID-19 pandemic is, unfortunately, still ongoing. The restrictions mentioned in Plaintiffs' Complaint have certainly been lessened or in some cases lifted completely, but COVID-19 continues to spread nationwide, including Pennsylvania. It is entirely possible that restrictions similar to those in Plaintiffs' Complaint will be reinstated by Pennsylvania and/or the City of Philadelphia while Plaintiffs are still insured by Defendant. Even if they are not, the pandemic and the public health orders certainly continued past Defendant's April 1, 2020 denial of Plaintiffs' claim and past Plaintiffs' May 6, 2020 filing of their Complaint. Furthermore, a declaration that the language of this policy does or does not cover Plaintiffs for their losses from the COVID-19 pandemic could influence both Plaintiffs' and Defendant's decision-making and negotiations for future insurance policies in the event this pandemic continues after the policy expires, or indeed, if we have the misfortune of having to face another pandemic of this magnitude in the future.

**\*4** Plaintiffs' Complaint references damages from "the presence of COVID-19," and claims losses beginning on March 16, 2020, but does not specify an end date for damages. (Mot. Remand Ex. A ¶¶ 23, 32). Paragraph 34 of the Complaint states Plaintiffs are seeking a declaration that "Defendant is obligated to pay Plaintiffs due to ... losses ... *attributable to the COVID-19 pandemic during the covered policy period.*" (Mot. Remand Ex. A ¶ 34) (emphasis added). While some of those losses certainly accrued before this action was filed, it is indisputable that the pandemic continued past Plaintiff's filing on May 6, 2020, that the pandemic is still ongoing, and that the covered policy period is still ongoing.

Plaintiffs' action does not contain a parallel claim for breach of contract. That Plaintiffs *could* seek an action for breach of contract (or make any other plausible claim) does not make declaratory judgment inappropriate, as provided for by the text of the DJA itself. 28 U.S.C. § 2201(a) ("[A]ny court of the United States ... may declare the rights and

other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*") (emphasis added). Given that the DJA allows for declaratory judgments regardless of whether further action is or could be sought, and that a declaration of rights and legal obligations in this case does implicate some future conduct in addition to past conduct, the DJA is applicable in this case. This Court therefore has discretion over whether to hear this case or remand it to the Philadelphia Court of Common Pleas.

**B. Appropriateness of Exercising Discretion**

The DJA confers discretion on this Court by providing it "may" declare the rights and other legal relations of parties. 28 U.S.C. § 2201(a). The Supreme Court confirms this discretion exists in *Brillhart* and *Wilton*.[2] In the Third Circuit, cases seeking declaratory judgment fall into two categories: those with independent legal claims and those without. *Rarick*, 852 F. 3d at 223. Those cases which contain independent legal claims, carry a "virtually unflagging obligation" for district courts to exercise their jurisdiction. *Id.* at 229. Declaratory judgment actions without independent legal claims attached confer broader discretion on district courts in deciding whether to exercise their jurisdiction under the DJA. *Id.*

While Plaintiffs' Complaint does not contain a claim for legal relief, Defendant argues said Complaint alleges all of the elements for breach of contract, thereby creating a *de facto* independent claim. (Def. Resp. Br. 5.) Granting this premise for just a moment, a quick analysis under the "independent claims" test reveals that a decision to remand this case would nevertheless be appropriate. While *Rarick* notes a "virtually unflagging obligation" for district courts to hear declaratory judgment cases containing independent claims for legal relief, the Third Circuit notes the obligation is subject to an "exceptional circumstances" analysis. *Rarick* at 229,. The "exceptional circumstances" test is derived from *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Colorado River* provides that exceptional circumstances exist where "the order to the parties to [remand] to the state court would clearly serve an important countervailing interest." *Id. Colorado River* further notes that remand to state court is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar." *Id.*

This Court must therefore weigh the public policy interest of remanding the present case to state court, against the interests of Defendant to be heard in a federal forum. The Third Circuit itself notes that "the desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Summy*, 234 F. 3d at 136. The novel, complex, and unsettled state law issues implicated in this case are of obvious gravity, weighing heavily towards remand. Combined with the relatively weak interest of Defendant to be heard on this state law claim in a federal forum, under the "independent claim" test, it is appropriate—and indeed necessary—for this Court to remand this action to Pennsylvania state court.

**\*5** Of course, the independent claims test is not even implicated here, despite Defendant's arguments to the contrary. Plaintiffs have not brought a claim for any legal relief, and as such, this Court is not bound to the independent claims test. The court's discretion in deciding whether to hear this case or remand it to state court is therefore broader.

*Reifer* issues clear guidance on exercising jurisdiction over declaratory cases that do not contain independent claims. Specifically, *Reifer* states that "the proper relationship between state and federal courts requires district courts to step back" to allow state courts to settle their own unsettled law. *Reifer*, 751 F. 3d at 141. This Court must also consider the likelihood that it can resolve the uncertainty of obligation at issue here, as well as the public's interest in the settlement of the uncertainty of obligation.[3] *Id.* In diversity cases such as this, federal courts must apply state law. Where the state law issue(s) being presented are novel, federal courts are tasked with having to predict how state courts would decide the issue(s). Given the novelty of the state law issue of insurance coverage for losses resulting from the COVID-19 pandemic, the Pennsylvania state courts are clearly better equipped to settle the uncertainty of obligation, and it is in the public's interest for them to do so. As such, this Court must therefore step back and allow Pennsylvania state courts to resolve the uncertainty. While federal courts are sometimes compelled to predict state law, it is often by reason of original jurisdiction and a lack of discretion to remand. Here, this Court does have a choice to decline to predict as-of-yet unestablished state law and instead allow Pennsylvania to establish that law for itself. As to *Reifer*'s concern regarding public interest, there is a clear and strong public interest that the uncertainty of obligation in this case be resolved. Insurance liability related to the COVID-19 pandemic is likely to be the subject of a significant number of cases in

Pennsylvania state court. Furthermore, clarifying whether or not certain language in insurance policies creates coverage for losses due to COVID-19 will impact a significant portion of the population operating businesses of all kinds throughout the Commonwealth.

In sum, Plaintiffs present no independent claim for legal relief in their Complaint. Assuming *arguendo* they had, the circumstances of the ongoing COVID-19 pandemic may clearly be considered "exceptional" under *Colorado River*, thereby necessitating remand to state court. The issues of state law presented in Plaintiffs' action are novel, complex, and exceedingly important, creating a compelling public policy interest for these claims to be allowed to be decided by Pennsylvania courts. The Supreme Court in *Wilton* advises us to consider "practicality and wise judicial administration" in deciding whether to exercise jurisdiction under the DJA.

*Wilton*, 515 U.S. at 288, 115 S.Ct. 2137. It is neither practical nor wise for this Court to attempt to predict how Pennsylvania would decide this novel and complex issue of state law when the discretion exists to allow Pennsylvania[4] courts to address the matter for themselves.

## V. Conclusion

**\*6** For the reasons set forth herein, Plaintiffs' Motion to Remand this action to the Philadelphia Court of Common Pleas shall be granted.

An appropriate Order follows.

## All Citations

Slip Copy, 2020 WL 4735498

---

Footnotes

| | |
|---|---|
| 1 | Hanover Insurance Company and Citizens Insurance Company of America are incorrectly identified as "The Hanover Insurance Group" in the Complaint and are referred to here as such for convenience. |
| 2 | *See supra* § III. |
| 3 | There are other *Reifer* factors, including the convenience of the parties, the availability and relative convenience of other remedies, and a policy of restraint when the same issues are pending in state court. *Reifer*, 751 F. 3d at 140. Assessment of these factors reveals that they push neither in favor of nor against exercising discretion. |
| 4 | This Court notes that Defendant brings a counterclaim seeking declaratory judgment on their rights and obligations regarding Plaintiffs' New Jersey office, in addition to their Pennsylvania office. New Jersey was among the hardest-hit states in the nation by COVID-19 and as such, their interest in deciding their own state law on this matter is similarly strong. Defendant's counterclaim will therefore be dismissed without prejudice so that this matter may be brought in state court if either party so chooses. |

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

2020 WL 5051459
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

DIANOIA'S EATERY, LLC, d/b/a
Dianoia's and Pizzeria Davide, Plaintiff,

v.

MOTORISTS MUTUAL
INSURANCE COMPANY, Defendant.

Civil Action No. 20-787
|
Filed 08/27/2020

**Attorneys and Law Firms**

James C. Haggerty, Haggerty, Goldberg, Schleifer & Kupersmith, Philadelphia, PA, John P. Goodrich, Goodrich & Associates, P.C., Pittsburgh, PA, Jonathan Shub, Shub Law Firm LLC, Haddonfield, NJ, Scott B. Cooper, Schmidt Kramer PC, Harrisburg, PA, for Plaintiff.

Matthew A. Meyers, Robert E. Dapper, Jr., Taylor M. Wantz, Burns White LLC, Pittsburgh, PA, for Defendant.

**ORDER OF COURT**

Nora Barry Fischer, Senior U.S. District Judge

*1  AND NOW, this 27th day of August, 2020, upon consideration of Plaintiff Dianoia's Eatery, LLC's Motion to Remand this declaratory judgment action seeking a declaration of coverage against Defendant Motorists Mutual Insurance Company for losses sustained due to COVID-19 pandemic shutdown orders, (Docket No. 8), Defendant's Response and Brief in Opposition, (Docket Nos. 10, 11), Plaintiff's Reply, (Docket No. 13), Defendant's Sur-Reply, (Docket No. 15), the notices of supplemental authority filed by the parties, (Docket Nos. 16, 17, 18), the prior Orders of this Court entered in *Dianoia's Eatery, LLC v. Motorists Mutual Insurance Company*, Civ. A. No. 20-706, the first of which, Docket No. 3 (W.D. Pa. May 19, 2020), remanded this case pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction and noted in the alternative that the Court would decline to exercise jurisdiction over such action under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. ("DJA") after analyzing the relevant factors set forth by the Third

Circuit in *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 n.4 (3d Cir. 2014) and the second Order, Docket No. 5 (W.D. Pa. May 27, 2020), which dismissed an amended and renewed notice of removal for lack of jurisdiction under 28 U.S.C. § 1447(d) given that the case had been remanded to the state court and once again commented that it would decline to exercise subject matter jurisdiction under the DJA and the Third Circuit's decision in *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017), and the Court further finding that Defendant's third attempt to remove this matter fares no better such that the Court will decline to exercise subject matter jurisdiction under the DJA for the reasons previously expressed, and that this Court's rationale is enhanced by the highly persuasive recent decisions in *Umami Pittsburgh, LLC d/b/a Umami v. Motorists Commercial Mutual Insurance Company*, Civil Case No. 2:20-cv-999, (W.D. Pa. Aug. 26, 2020) (Cercone, J.), and *Greg Prosmushkin, P.C. et al. v. the Hanover Insurance Group*, Civ. A. No. 20-2561, 2020 WL 4735498 (W.D. Pa. Aug. 14, 2020) (Jones, J.), remanding cases under similar facts and circumstances;

ACCORDINGLY, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand [8] is GRANTED and this matter is REMANDED to the Court of Common Pleas of Allegheny County, forthwith;

IT IS FURTHER ORDERED that the Clerk of Court shall mark this case CLOSED and serve a certified copy of this Order on the Prothonotary for the Court of Common Pleas of Allegheny County, forthwith.

In so holding, the Court notes that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The DJA expressly provides that courts "**may** declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Although this case was "originally brought in state court under Pennsylvania law, the question of whether to exercise federal jurisdiction to adjudicate the controversy [becomes] a procedural issue under federal law." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 n.4 (3d Cir. 2014) (citations omitted). This Court may decline to exercise jurisdiction under the DJA in situations such as this case when there is not a parallel state action after weighing factors set forth by the Third Circuit "bearing on the usefulness of the declaratory judgment remedy." *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 282 (3d Cir. 2017). The Court

of Appeals has held that the following factors should be considered, to the extent they are relevant:

**\*2** 1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

2) the convenience of the parties;

3) the public interest in settlement of the uncertainty of obligation;

4) the availability and relative convenience of other remedies;

5) a general policy of restraint when the same issues are pending in state court;

6) avoidance of duplicative litigation;

7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

8) in the insurance context, an inherent conflict of interest between an insurers' duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146. The Court of Appeals continued:

[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to "step back" and be "particularly reluctant" to exercise DJA jurisdiction. [*State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135-36 (3d Cir. 2000)] ("[T]he state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum."). The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases." *Id.* at 135.

*Reifer*, 751 F.3d at 148. Further, "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law." *Summy*, 234 F.3d at 135.

At the outset, Defendant contends that the Court lacks discretion to decline jurisdiction under the DJA because Plaintiff's Complaint is truly a hybrid action seeking both damages for breach of contract and a declaration of coverage. Defendant reasons that application of the independent claims

test set forth in *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) should result in this Court maintaining its virtually unflagging obligation to retain jurisdiction over this action. The Court disagrees because Plaintiff's single-count declaratory judgment action simply does not state a breach of contract action against Defendant seeking damages. As in *Prosmushin* and *Umami*, Defendant's attempt to recharacterize Plaintiff's complaint is unavailing. To this end, as Judge Jones explained:

Defendant claims Plaintiffs' action is in truth seeking legal, rather than declaratory judgment. While Plaintiffs' Complaint contains factual allegations that could potentially amount to breach of contract, Plaintiffs do not bring a parallel breach of contract claim. The Third Circuit warns of legal claims that "masquerade as a declaratory judgment" in order to activate discretionary jurisdiction. *Reifer* at 137. However, Plaintiffs' action is broader than Defendant's April 1, 2020 denial. Rather than alleging Defendant's denial was a breach of contract, Plaintiffs are seeking a more general declaration regarding their losses under an ongoing insurance policy caused by an ongoing pandemic. An action seeking declaratory judgment which would necessarily implicate payment by an insurer if the court finds that liability exists, does not automatically convert to a legal claim. Id. at 136. To use an example from this case, a legal claim "masquerading" as a declaratory claim would be one where Plaintiffs narrowly seek a declaration as to whether the April 1, 2020 denial by Defendant was proper. This would be a case which would have very obvious and specific damages attached to a declaration in Plaintiffs' favor, and as such, declaratory relief would be indistinguishable from legal relief. However, in this case, a broader declaration is sought by Plaintiffs regarding the rights and obligations of the parties for the entire duration of the insurance policy, as it continues to run simultaneously with the COVID-19 pandemic.

**\*3** *Prosmushin*, 2020 WL 4735498, at \*3 (E.D. Pa. Aug. 14, 2020); *see also Umami*, at 1 ("Defendants contend that removal is based upon the Court's nondiscretionary, original, diversity jurisdiction because Plaintiff's Complaint 'expressly alleges a 'breach of contract' claim relative to first party property coverages that seeks money damages." Having read the Complaint and Amended Complaint, the Court finds that Plaintiff seeks solely declaratory relief.").

The same is true here because Plaintiff's Complaint seeks a declaration that Plaintiff "is entitled to coverage for losses, damages, and expenses caused by the COVID-19 pandemic

2020 WL 5051459

and the referenced Orders from Defendants, Motorists Mutual Insurance Company; and (b) such other relief as the court deems appropriate." (Docket No. 1-1 at 9). Plaintiff is the master of its complaint and certainly could have, but chose not to, pursue theories for legal relief against Defendant, including a claim for breach of contract, bad faith insurance practices, among others. However, the fact that Plaintiff could have brought additional claims in this action does not negate the Court's discretion under the DJA. *See Prosmushkin*, 2020 WL 4735498, at *4 ("That Plaintiffs could seek an action for breach of contract (or make any other plausible claim) does not make declaratory judgment inappropriate, as provided for by the text of the DJA itself."); *see also* 28 U.S.C. § 2201(a) ("[A]ny court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*") (emphasis added). Therefore, the Court rejects Defendant's position that the Court lacks discretion to decline jurisdiction over this matter under the DJA and will continue its analysis. *See id.*

As this Court previously held, it has carefully considered each of the *Reifer* factors outlined above and concludes that Plaintiff's Complaint raises novel insurance coverage issues under Pennsylvania law, (i.e., business interruption, civil authority, extra expense, contamination, as well as pertinent exclusions raised by the defense), which are best reserved for the state court to resolve in the first instance. *See e.g., Reifer*, 751 F.3d at 148; *Summy*, 234 F.3d at 135. While a high volume of these types of insurance coverage cases have been brought by policyholders and insurance companies in state and federal courts across the country, including multiple cases in this District, there is not yet a body of caselaw developed by Pennsylvania courts due to the relative recency of the COVID-19 pandemic. Thus, "serious consideration" must be given to the facts that any declaration issued by this Court as to the parties' rights under the insurance policy would be merely predicting how Pennsylvania courts would decide these novel issues arising from the COVID-19 pandemic, a matter of great public concern, with little persuasive authority from state courts on these issues. *Reifer*, 751 F.3d at 148.

Both Judge Cercone and Judge Jones have reasoned similarly. In *Umami*, Judge Cercone remanded after holding that:

> Because such issues have not been addressed by the Commonwealth's highest court, any declaration of this Court as to the parties' rights under the insurance policy would be predicting how Pennsylvania courts would decide

the COVID-19 coverage issues with little or no persuasive authority from the Pennsylvania state courts.

**\*4** *Umami*, at 4. Judge Jones further expounded on this rationale in *Prosmushkin*:

> Given the novelty of the state law issue of insurance coverage for losses resulting from the COVID-19 pandemic, the Pennsylvania state courts are clearly better equipped to settle the uncertainty of obligation, and it is in the public's interest for them to do so. As such, this Court must therefore step back and allow Pennsylvania state courts to resolve the uncertainty. While federal courts are sometimes compelled to predict state law, it is often by reason of original jurisdiction and a lack of discretion to remand. Here, this Court does have a choice to decline to predict as-of-yet unestablished state law and instead allow Pennsylvania to establish that law for itself. As to *Reifer*'s concern regarding public interest, there is a clear and strong public interest that the uncertainty of obligation in this case be resolved. Insurance liability related to the COVID-19 pandemic is likely to be the subject of a significant number of cases in Pennsylvania state court. Furthermore, clarifying whether or not certain language in insurance policies creates coverage for losses due to COVID-19 will impact a significant portion of the population operating businesses of all kinds throughout the Commonwealth.

> ...

> It is neither practical nor wise for this Court to attempt to predict how Pennsylvania would decide this novel and complex issue of state law when the discretion exists to allow Pennsylvania courts to address the matter for themselves.

*Promushkin*, 2020 WL 4735498, at *5. This Court adopts the same rationale and would further add that insurance coverage is a creation of state law, with policy language and premium rates being approved by the Pennsylvania Insurance Department in a highly regulated industry. Likewise, the shut down orders and other restrictions placed on Plaintiff's business are issued by state and local authorities. Hence, the Commonwealth's interest in this and similar litigation is paramount such that a remand to state court is the appropriate course in this case.

All told, the first, third, fourth and fifth *Reifer* factors strongly weigh in favor of remanding this matter to state court and clearly outweigh the lone factor in Defendant's favor, i.e., its

Dianoia's Eatery, LLC v. Motorists Mutual Insurance Company, Slip Copy (2020)

2020 WL 5051459

clear preference to litigate in this federal forum, as evidenced by its three attempts to remove this action.

For all of these reasons, this matter is hereby remanded to the Court of Common Pleas of Allegheny County, forthwith.

**All Citations**

Slip Copy, 2020 WL 5051459

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

🔖 KeyCite Yellow Flag - Negative Treatment

Distinguished by PAPPY'S BARBER SHOPS, INC. et al., Plaintiffs, v. FARMERS GROUP, INC. et al., Defendants. Additional Party Names: Farmers Insurance Company, Inc., Pappy's Barber Shop Poway, Inc., Truck Insurance Exchange, S.D.Cal., September 11, 2020

2020 WL 4692385
Only the Westlaw citation is currently available.
United States District Court, W.D.
Missouri, Southern Division.

STUDIO 417, INC., et al., Plaintiffs,

v.

The CINCINNATI INSURANCE
COMPANY, Defendant.

Case No. 20-cv-03127-SRB
|
Signed 08/12/2020

## Attorneys and Law Firms

Jack Thomas Hyde, Thomas A. Rottinghaus, Tyler Hudson, Wagstaff & Cartmell, Jeremy M. Suhr, Brandon J.B. Boulware, Boulware Law LLC, Todd M. Johnson, Votava Nantz & Johnson LLC, Kansas City, MO, for Plaintiffs.

Daniel G. Litchfield, Pro Hac Vice, Litchfield Cavo LLP, Chicago, IL, Ericka Hammett, Pro Hac Vice, Litchfield Cavo LLP, Milwaukee, WI, Kelvin J. Fisher, Michael Lloyd Brown, Wallace Saunders, Overland Park, KS, for Defendant.

## ORDER

STEPHEN R. BOUGH, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendant The Cincinnati Insurance Company's ("Defendant") Motion to Dismiss. (Doc. #20.) For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

Because this matter comes before the Court on a motion to dismiss, the following allegations in Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") are taken as true. (Doc. #16); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015).[1]

The named Plaintiffs in this case are Studio 417, Inc. ("Studio 417"), Grand Street Dining, LLC ("Grand Street"), GSD Lenexa, LLC ("GSD"), Trezomare Operating Company, LLC ("Trezomare"), and V's Restaurant, Inc. ("V's Restaurant") (collectively, the "Plaintiffs"). Studio 417 operates hair salons in the Springfield, Missouri, metropolitan area. Grand Street, GSD, Trezomare, and V's Restaurant own and operate full-service dining restaurants in the Kansas City metropolitan area.

Plaintiffs purchased "all-risk" property insurance policies (the "Policies") from Defendant for their hair salons and restaurants. (Doc. #1-1, ¶ 26.) All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded. The Policies include a Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form. Defendant issued each Plaintiff a separate policy, and all were in effect during the applicable time period. The parties agree that the Policies contain the same relevant language.

The Policies provide that Defendant would pay for "direct 'loss' unless the 'loss' is excluded or limited" therein. (Doc. #16, ¶ 27.) A "Covered Cause of Loss" "is defined to mean accidental [direct] physical loss *or* accidental [direct] physical damage." (Doc. #16, ¶ 31) (emphasis supplied); (Doc. #1-1, pp. 24, 57.)[2] The Policies do not define "physical loss" or "physical damage." The Policies also "do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases." (Doc. #16, ¶ 13.) A loss, as defined above, is a prerequisite to invoke the different types of coverage sought in this lawsuit. (*See* Doc. #21, p. 15.) These coverages are set forth below.

First, the Policies provide for Business Income coverage. Under this coverage, Defendant agreed to:

> pay for the actual loss of 'Business Income' ... you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The suspension must be caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss.

(Doc. #1-1, pp. 37-38.)

Second, the Policies provide "Civil Authority" coverage. This coverage applies to:

   **2**  the actual loss of 'Business Income' sustained 'and necessary Extra Expense' sustained 'caused by action of civil authority that prohibits access to' the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and 'the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage[.]'
(Doc. #16, ¶ 42.)

Third, the Policies provide "Ingress and Egress" coverage. This coverage is specified as follows:

   We will pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a 'premises' shown in the Declarations due to direct 'loss' by a Covered Cause of Loss at a location contiguous to such 'premises.' However, coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority.
(Doc. #1-1, p. 95.)

Fourth, the Policies provide "Dependent Property" coverage. This coverage applies if the insured suffers a loss of Business Income because of a suspension of its business "caused by direct 'loss' to 'dependent property.' " (Doc. #1-1, pp. 63-64.) "Dependent property means property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [and] [a]ttract customers to [the insured's] business." (Doc. #1-1, p. 64.)

Finally, the Policies provide what is commonly known as "Sue and Labor" coverage. In relevant part, the Policies require the insured to "take all reasonable steps to protect the Covered Property from further damage," and to keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim. (Doc. #1-1, pp. 49-50.) The Policies do not exclude or limit losses from viruses, pandemics, or communicable diseases. (Doc. #16, ¶ 28.)

Plaintiffs seek coverage under the Policies for losses caused by the Coronavirus ("COVID-19") pandemic. Plaintiffs allege that over the last several months, it is likely that

customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus. (Doc. #1-1, ¶ 60.) Plaintiffs allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) Plaintiffs further allege that the presence of COVID-19 "renders physical property in their vicinity unsafe and unusable," and that they "were forced to suspend or reduce business at their covered premises." (Doc. #1-1, ¶¶ 14, 58, 102.)

In response to the COVID-19 pandemic, civil authorities in Missouri and Kansas issued orders requiring the suspension of business at various establishments, including Plaintiffs' businesses (the "Closure Orders"). The Closure Orders "have required and continue to require Plaintiffs to cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the[ir] premises." (Doc. #16, ¶¶ 106-107.) Plaintiffs allege that the presence of COVID-19 and the Closure Orders caused a direct physical loss or direct physical damage to their premises "by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration." (Doc. #16, ¶¶ 102.) Plaintiffs allege that their losses are covered by the Business Income, Civil Authority, Ingress and Egress, Dependent Property, and Sue and Labor coverages discussed above. (Doc. #16, ¶¶ 103-108.) Plaintiffs provided Defendant notice of their losses, but Defendant denied the claims. (Doc. #16, ¶¶ 110-115.)

   **3**  On April 27, 2020, Plaintiffs filed this lawsuit against Defendant. The Amended Complaint asserts claims for a declaratory judgment and for breach of contract based on Business Income coverage (Counts I, II), Extra Expense coverage (Counts III, IV), Dependent Property coverage (Counts V, VI), Civil Authority coverage (Counts VII, VIII), Extended Business Income coverage (Counts IX, X), Ingress and Egress coverage (Counts XI, XII), and Sue and Labor coverage (Counts XIII, XIV). The Amended Complaint also seeks class certification for 14 nationwide classes (one for each cause of action) and a Missouri Subclass that consists of "all policyholders who purchased one of Defendant's policies in Missouri and were denied coverage due to COVID-19." (Doc. #16, ¶¶ 117-125; *see also* Doc. #21, pp. 12-13.)

Defendant responded to the Amended Complaint by filing the pending motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). Defendant's overarching argument is that the Policies provide coverage "only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease ... the same direct physical loss requirement applies to all the coverages for which Plaintiffs sue." (Doc. #21, p. 8.) Even if a loss is adequately alleged, Defendant argues that the Amended Complaint fails to state a claim as to each type of coverage at issue. Plaintiffs oppose the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

Because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policies[.]" *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, "[t]he interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. App. W.D. 2015)).[3] "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.' " *Id.* (citing *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)). "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 667 (Mo. App. E.D. 2001).

**\*4** "Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law) (quotations omitted). When interpreting policy terms, "the central issue ... is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.* (quotations omitted). If the "insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer." *Id.* (quotations omitted).

## III. DISCUSSION

### A. Plaintiffs Have Adequately Alleged a Direct "Physical Loss" Under the Policies.

Defendant's first argument is that Plaintiffs have not adequately pled a "physical loss" as required by the Policies. (Doc. # 21, pp. 7-8, 15-16, 19-25; Doc. #37, pp. 2-10.) Defendant argues that "direct physical loss requires actual, tangible, permanent, physical alteration of property." (Doc. #21, p. 19) (citing cases). Defendant claims that the Policies provide property insurance coverage, and "are designed to indemnify loss or damage to property, such as in the case of a fire or storm. [COVID-19] does not damage property; it hurts people." (Doc. #21, p. 7.) According to Defendant, the requirement of a tangible physical loss applies to—and precludes—each type of coverage sought in this case.

In response, Plaintiffs agree that "physical loss" and "physical damage" are "the key phrases" in the Policies. (Doc. #31, p. 7.) However, Plaintiffs emphasize that the Policies expressly cover "physical loss *or* physical damage." (Doc. #31, p. 11) (emphasis supplied). This "necessarily means that either a 'loss' or 'damage' is required, and that 'loss' is distinct from 'damage.' " (Doc. #31, p. 11.) As such, Plaintiffs argue that Defendant's focus on an actual physical alteration ignores the coverage for a "physical loss." Plaintiffs further argue that Defendant could have defined "physical loss" and "physical damage," but failed to do so. Plaintiffs argue this case should not be disposed of on a motion to dismiss because "even if [Defendant's] interpretation of the policy language is reasonable ... Plaintiffs' interpretation is also reasonable[.]" (Doc. #31, p. 11.)

Upon review of the record, the Court finds that Plaintiffs have adequately stated a claim for direct physical loss.

First, because the Policies do not define a direct "physical loss" the Court must "rely on the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763; *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 638 (Mo. App. E.D. 2001) (recognizing that standard dictionaries should be consulted for determining ordinary meaning). The Merriam-Webster dictionary defines "direct" in part as "characterized by close logical, causal, or consequential relationship." Merriam-Webster, www.merriam-webster.com/dictionary/direct (last visited August 12, 2020). "Physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature." Merriam-Webster, www.merriam-webster.com/dictionary/physical (last visited August 12, 2020). "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss (last visited August 12, 2020).

Applying these definitions, Plaintiffs have adequately alleged a direct physical loss. Plaintiffs allege a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." (Doc. #16, ¶ 58.) Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763.

 **\*5** Second, the Court "must give meaning to all [policy] terms and, where possible, harmonize those terms in order to accomplish the intention of the parties." *Macheca Transp. v. Philadelphia Indem. Ins. Co.*, 649 F.3d 661, 669 (8th Cir. 2011) (applying Missouri law). Here, the Policies provide coverage for "accidental physical loss *or* accidental physical damage." (Doc. #1-1, p. 57) (emphasis supplied). Defendant conflates "loss" and "damage" in support of its argument that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms. *See Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at \* 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous").

The Court's finding that Plaintiffs have adequately stated a claim is supported by case law. In *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349 (8th Cir. 1986), the

relevant provision provided that "[t]his policy insures against loss of or damage to the property insured ... resulting from all risks of direct physical loss[.]" *Id.* at 351. Applying Missouri law, the Eighth Circuit found this provision was ambiguous and affirmed the district court's decision that it covered "any loss or damage due to the *danger* of direct physical loss[.]" *Id.* at 352 (emphasis in original).

In *Mehl v. The Travelers Home & Marine Ins. Co.*, Case No. 16-CV-1325-CDP (E.D. Mo. May 2, 2018), the plaintiff discovered brown recluse spiders in his home. *Id.* at p. 1. The plaintiff unsuccessfully attempted to eliminate the spiders, and then left the home. *Id.* The plaintiff considered the property uninhabitable and filed a claim under his homeowners insurance policy for loss of use of the property. *Id.* After his insurance company denied the claim, the plaintiff filed suit for breach of contract. The insurance company moved for summary judgment and argued that the policy only covered "direct physical loss" which required "actual physical damage." *Id.* at p. 2.

*Mehl* rejected this argument. As in this case, the *Mehl* policy did not define "physical loss" and the insurance company "point[ed] to no language in the policy that would lead a reasonable insured to believe that actual physical damage is required for coverage." *Id.* Although the policy in *Mehl* provided coverage for "loss of use," *Mehl* supports the conclusion that "physical loss" is not synonymous with physical damage. *Id.*

Other courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose. *See Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, CV–01–1362–ST, 2002 WL 31495830, at \* 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.").

To be sure, and as argued by Defendant, there is case law in support of its position that physical tangible alteration is required to show a "physical loss." (Doc. #21, pp. 19-25; Doc. #37, pp. 3-10.)[4] However, Plaintiffs correctly respond that these cases were decided at the summary judgment stage, are factually dissimilar, and/or are not binding. For example, Defendant argues that "[a] seminal case concerning the direct physical loss requirement is *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006)." (Doc. #21, pp. 19-20.) However, *Source Food* was decided in the summary judgment context and under Minnesota law. *Source Food*, 465 F.3d at 834-36. Moreover, the facts of *Source Foods* are distinguishable. In that case, the insured's beef was not allowed to cross from Canada into the United States because of an embargo related to mad cow disease. *Id.* at 835. Because of the embargo, the insured was unable to fill orders and had to find a new supplier. Importantly, there was no evidence that the beef was actually contaminated. *Id.*

**\*6** The insured sought coverage based on a provision requiring "direct physical loss to property." The district court denied coverage, and the Eighth Circuit affirmed, explaining that:

> [a]lthough Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless.

*Id.* at 838.

The facts alleged in this case do not involve the transportation of uncontaminated physical products. Instead, Plaintiffs allege that COVID-19 is a highly contagious virus that is physically "present ... in viral fluid particles," and is "deposited on surfaces or objects." (Doc. #16, ¶¶ 47, 50.) Plaintiffs further allege that this physical substance is likely on their premises and caused them to cease or suspend operations. Unlike *Source Foods*, the Plaintiffs expressly allege physical contamination. Finally, *Source Foods* recognized (under Minnesota law) that physical loss could be found without structure damage. *Source Foods*, 465 F.3d at 837 (stating that property could be "physically contaminated ... by the release of asbestos fibers"). Neither

*Source Foods* nor the other cases cited by Defendant warrant dismissal under Rule 12(b)(6).

Defendant's reply brief cites recent out-of-court decisions which found that COVID-19 does not cause direct physical loss. (Doc. #37, pp. 5-6.) For example, Defendant relies on *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. 2020). Defendant argues that "*Social Life* famously states that the virus damages lungs, not printing presses." (Doc. #37, p. 6.) But the present case is not about whether COVID-19 damages lungs, and the presence of COVID-19 on premises, as is alleged here, is not a benign condition. Regardless of the allegations in *Social Life* or other cases, Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable.[5] This is enough to survive a motion to dismiss.

Defendant also contends that if Plaintiffs' interpretation is accepted, physical loss would be found "whenever a business suffers economic harm." (Doc. #21, p. 22; Doc. #37, p. 2.) That is not what the Court holds here. Although Plaintiffs allege economic harm, that harm is tethered to their alleged physical loss caused by COVID-19 and the Closure Orders. (Doc. #1-1, ¶¶ 106-107) (alleging that COVID-19 pandemic and Closure Orders required Plaintiffs to "cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the premises.")[6] For all these reasons, the Court finds that Plaintiffs have adequately alleged a direct physical loss under the Policies.[7]

### B. Plaintiffs Have Plausibly Stated a Claim for Civil Authority Coverage.

**\*7** Defendant next argues that Plaintiffs' claim for civil authority coverage should be dismissed for failure to state a claim. Defendant presents two arguments in support of dismissal. Defendant first contends that civil authority coverage requires "direct physical loss to property other than the Plaintiffs' property," and that "[j]ust as the Coronavirus is not causing direct physical loss to Plaintiffs' premises, it is not causing direct physical loss to other property." (Doc. #21, p. 27.)

This argument is rejected for substantially the same reasons as discussed above. Plaintiffs adequately allege that they suffered a physical loss, and such loss is applicable to other property. Additionally, Plaintiffs allege that civil authorities

2020 WL 4692385

issued closure and stay at home orders throughout Missouri and Kansas, which includes property other than Plaintiffs' premises.

Defendant's second argument is that civil authority coverage "requires that access to Plaintiffs' premises be prohibited by an order of Civil Authority. But, none of the orders Plaintiffs allege prohibit access to their premises. To the contrary, the Plaintiffs admit ... that the Closure Orders allowed restaurant premises to remain open for food preparation, take-out and delivery. Likewise, Plaintiffs concede that the Closure Orders did not prohibit access to salon premises." (Doc. #21, pp. 28-29) (citations omitted).

Upon review of the record, the Court finds that Plaintiffs have adequately alleged that their access was prohibited. With respect to Studio 417's hair salons, the Amended Complaint alleges that a Closure Order "required hair salons and all other businesses that provide personal services to suspend operations." (Doc. #16, ¶ 67.) With respect to Plaintiffs' restaurants, the Closure Orders mandated "that all inside seating is prohibited in restaurants," and that "every person in the State of Missouri shall avoid eating or drinking at restaurants," with limited exceptions for "drive-thru, pickup, or delivery options." (Doc. #16, ¶¶ 71-80.)

At the motion to dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage. *Compare TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 WL 1331700, at * 4 (Minn. Ct. App. June 7, 2005) ("Because access remained and the level of business was not dramatically decreased, the civil authority section of the insurance policy is inapplicable and the district court did not err in granting summary judgment."). This is particularly true insofar as the Policies require that the "civil authority prohibits access," but does not specify "all access" or "any access" to the premises. For these reasons, Plaintiffs have adequately stated a claim for civil authority coverage.

### C. Plaintiffs Have Plausibly Stated a Claim for Ingress and Egress Coverage.

Defendant argues that Plaintiffs' claim for ingress and egress coverage should be dismissed for two reasons. First, Defendant argues that such coverage "requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss," and that Plaintiffs fail to allege a direct physical loss to any location. (Doc. #21, p.

30.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that this "coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority." (Doc. #21, p. 24; Doc. #1-1, p. 95.) Defendant contends that "[h]ere, the Closure Orders issued by civil authorities are the only identified causes of Plaintiffs' alleged losses." (Doc. #21, p. 30.) However, Plaintiffs have alleged that both COVID-19 and the Closure Orders rendered the premises unsafe for ingress and egress. (Doc. #1-1, p. 3, ¶ 14 ("Plaintiffs were forced to suspend or reduce business at their covered premises due to COVID-19 and the ensuing orders issued by civil authorities[.]"). The Court finds that Plaintiffs have adequately stated a claim for ingress and egress coverage.

### D. Plaintiffs Have Plausibly Stated a Claim for Dependent Property Coverage.

**\*8** Defendant argues that Plaintiffs' claim for dependent property coverage should be dismissed for two reasons. First, Defendant argues that this coverage "requires both a direct physical loss to dependent property and a necessary suspension of the insured's business as a result of that direct physical loss." (Doc. #21, p. 30.) Defendant contends that "[h]ere, again, the [Amended] Complaint does not allege any facts that show direct physical loss at any location, let alone a dependent property." (Doc. #21, pp. 30-31.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that Plaintiffs have failed to adequately allege a suspension of their businesses because of the lack of material or services from a "dependent property." (Doc. #21, pp. 30-31.) As stated above, dependent property is defined as "property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [or] [a]ttract customers to [the insured's] business." (Doc. #1-1, p. 64.) The Amended Complaint adequately alleges that Plaintiffs suffered a loss of materials, services, and lack of customers as a result of COVID-19 and the Closure Orders. The Court therefore finds that Plaintiffs have adequately stated a claim for dependent property coverage.

### E. Plaintiffs Have Plausibly Stated a Claim for Sue and Labor Coverage.

Finally, Defendant moves to dismiss Plaintiffs' claim for sue and labor coverage. Defendant argues that this is not an

Studio 417, Inc. v. Cincinnati Insurance Company, --- F.Supp.3d ---- (2020)

2020 WL 4692385

additional coverage, but instead imposes a duty on the insured to prevent further damage and to keep a record of expenses incurred in the event of a covered loss. Defendant argues that because Plaintiffs have failed to adequately allege a covered loss, a claim has not been stated for this coverage.

However, regardless of the title of this claim, Defendant acknowledges that in the event of a covered loss, "the insured can recover these expenses[.]" (Doc. #21, p. 31.) As discussed above, the Court finds that Plaintiffs have adequately stated a claim for a covered loss. Moreover, Plaintiffs allege that in complying with the Closure Orders and by suspending operations, they "incurred expenses in connection with reasonable steps to protect Covered Property." (Doc. #16, ¶ 250.) Consequently, the Court finds that Plaintiffs have adequately stated a claim for sue and labor coverage.

In sum, Defendant's motion to dismiss will be denied in its entirety. The Court emphasizes that Plaintiffs have merely pled enough facts to proceed with discovery. Discovery will

shed light on the merits of Plaintiffs' allegations, including the nature and extent of COVID-19 on their premises. In addition, the Court emphasizes that all rulings herein are subject to further review following discovery. Subsequent case law in the COVID-19 context, construing similar insurance provisions, and under similar facts, may be persuasive. If warranted, Defendant may reassert its arguments at the summary judgment stage.

## IV. CONCLUSION

Accordingly, Defendant The Cincinnati Insurance Company's Motion to Dismiss (Doc. #20) is DENIED.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2020 WL 4692385

## Footnotes

1   The Amended Complaint is 54 pages long and contains 253 separate allegations. This Order only discusses those allegations and issues necessary to resolve the pending motion.

2   All page numbers refer to the pagination automatically generated by CM/ECF.

3   Defendant notes that Kansas law may apply to one policy, but contends that Missouri and Kansas law are indistinguishable for purposes of the pending motion. (Doc. #21, p. 13 n.10.) Plaintiffs do not challenge this assertion. For purposes of this Order, the Court assumes that Missouri law applies.

4   See also Scott G. Johnson, "*What Constitutes Physical Loss or Damage in a Property Insurance Policy?*" 54 Tort Trial & Ins. Prac. L.J. 95, 96 (2019) ("[W]hen the insured property's structure is unaltered, at least to the naked eye ... [c]ourts have not uniformly interpreted the physical loss or damage requirement[.]")

5   Defendant also relies on *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, Case No. 20-258-CB (Ingham County, Mich. July 1, 2020) (transcript regarding defendant's motion for summary disposition). (Doc. #37-2.) *Gavrilides* is distinguishable, in part, because the court recognized that "the complaint also states a[t] no time has Covid-19 entered the Soup Shop of the Bistro ... and in fact, states that it has never been present in either location." (Doc. #37-2, p. 21.)

6   Defendant argues that COVID-19 does not present a physical loss because "the virus either dies naturally in days, or it can be wiped away." (Doc. #21, pp. 24-25.) However, as stated, a physical loss has been adequately alleged insofar as the presence of COVID-19 and the Closure Orders prohibited or significantly restricted access to Plaintiffs' premises. *See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at * 6 (D.N.J. Nov. 25, 2014) (recognizing that "courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct physical loss or damage"). Defendant also argues that Plaintiffs have failed to adequately allege that COVID-19 was actually present on their premises. Based on Plaintiffs' allegations, and because of COVID-19's wide-spread, this argument is also rejected.

7   Although it appears to be persuasive, the Court need not address Defendant's additional argument that the Amended Complaint fails to allege "physical damage."

**End of Document**        © 2020 Thomson Reuters. No claim to original U.S. Government Works.