**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK DANIEL HOSPITALITY LLC (d/b/a INC),<br><br>        Plaintiff,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>        Defendant. | Civil Action No. 20-06772 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

      This matter comes before the Court on a Motion to Remand filed by Plaintiff Mark Daniel Hospitality, LLC, doing business as INC ("Plaintiff"), and a Motion to Dismiss filed by Defendant AmGUARD Insurance Company ("Defendant").  In the Motion to Remand, Plaintiff argues that this Court should remand this matter for two reasons.  First, Plaintiff asserts that Defendant has failed to show that the amount in controversy is over $75,000, and therefore, this Court does not have subject matter jurisdiction. Second, Plaintiff contends that this Court should decline jurisdiction pursuant to the Declaratory Judgment Act ("DJA"), because this matter involves unsettled state law issues.  In the Motion to Dismiss, Defendant argues, primarily, that a coverage exclusion for viruses in the parties' insurance agreement bars recovery of Plaintiff's losses.  For the reasons set forth below, the Motion to Remand is **DENIED**, and the Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

The Court incorporates the facts from its prior Opinion in this matter by reference and states only those facts relevant to this Motion.  *Mark Daniel Hospitality, LLC v. AmGUARD Ins. Co.*, 495 F. Supp. 3d 328 (D.N.J. 2020).

Plaintiff operates the INC American Bar & Kitchen ("INC") in New Brunswick, New Jersey.  ECF No. 1, Not. of Removal, Ex. A ¶ 18 ("Complaint").  INC is an upscale sit-down restaurant and whiskey bar offering a full menu.  *Id.*  On November 24, 2019, Defendant issued Plaintiff an insurance policy (the "Policy"), which included coverage for Plaintiff's commercial property, including but not limited to, loss of the use of Plaintiff's building, personal property, and personal property of others under certain circumstances.  *Id.* ¶¶ 6, 8.  The Policy provides coverage to Plaintiff for, *inter alia*, business income, extra expense, and civil authority relating to any "Covered Cause of Loss" under the Policy.  *Id.* ¶ 9.  A "Covered Cause of Loss" is defined as "risk of direct physical loss unless the loss is . . . [e]xcluded in Paragraph B.  Exclusions Section I[.]" ECF No. 39-3, Leming Decl., Ex. A at A3.  Paragraph B(1)(J) excludes any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  *Id*. at A7-8 ("Virus Exclusion").  Further, it states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  *Id*. at A7.

Furthermore, under the Policy, business income is defined as:

> the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must by caused by or result from a Covered Cause of Loss.

*Id*. at A4.  The Policy additionally covers "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage

to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." *Id.* at A5.  Finally, the civil authority provision provides that "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises," subject to certain enumerated requirements. *Id.* at A5-A6.

On May 8, 2020, Plaintiff filed a one-count Complaint against Defendant in New Jersey state court, seeking a declaratory judgment as to Plaintiff's rights under the Policy.  Specifically, Plaintiff seeks a declaration that as a result of Governor Philip Murphy's COVID-19 Executive Orders, it was forced to close its restaurant, lay off staff, and has suffered "a substantial loss of business and income," and thus, was entitled to business interruption and extra expense coverage, as well as coverage under the Civil Authority provision.  Compl. ¶¶ 19, 24.

Defendant was served with Plaintiff's Complaint on May 11, 2020.  Notice of Removal ¶ 3.  Defendant thereafter removed the matter to this Court pursuant to 28 U.S.C. § 1446(a), on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *Id.* ¶¶ 3-5.  On June 26, 2020, Plaintiff filed a Motion to Remand, arguing, *inter alia*, the Court should exercise its discretion to decline to hear this declaratory action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  ECF No. 12.  On October 16, 2020, this Court determined that the *Reifer v. Westport Insurance Corporation*, 751 F.3d 129 (3d Cir. 2014), factors[1] weighed in favor of remand, and thus, granted

---

[1] The factors are: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to

INC's motion and remanded the case to state court. *See Mark Daniel Hospitality, LLC v. AmGUARD Ins. Co.*, 495 F. Supp. 3d 328 (D.N.J. 2020). Defendant appealed the decision to the Third Circuit, which remanded the matter back to this Court. *See Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 211 (3d Cir. 2021).[2] In so doing, the Third Circuit disagreed with this Court's application of the third and fifth *Reifer* factors. *Id*. Specifically, as to the third factor, the Third Circuit analyzed the four novel issues identified by this Court: (1) whether the Virus Exclusion applied to INC's asserted losses, (2) whether the application of the Virus Exclusion is void as against public policy, (3) whether INC suffered any physical loss or damage from a government order, and (4) whether INC met the requirements for civil authority coverage under the policy. *Id*. at 207-08. The Third Circuit determined that applying the first two issues, which both relate to the Virus Exclusion, fell within the normal bounds of federal court adjudication, and therefore, interpreting the Exclusion and applying New Jersey public policy to it did not present novel issues weighing in favor of remand to state court. *Id*. at 207-11.[3] As to the fifth factor, the Third Circuit stated that this factor did not weigh in favor of abstention because it did not apply, as this factor is "applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." *Id*. at 206. As such, the Third Circuit remanded "for renewed and rigorous consideration to all relevant [*Reifer*] factors to determine whether they outweigh the lack

---

[2] The Third Circuit consolidated the appeal with two other insurer appealed actions. *See Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. 20-787, 2020 WL 5051459 (W.D. Pa. Aug. 27, 2020); *Umami Pittsburgh, LLC v. Motorists Commercial Mut. Ins. Co.*, No. 20-999 (W.D. Pa. Aug. 26, 2020).

[3] Regarding the third and fourth novel issues, the Third Circuit stated, without further comment, that it was "possible that one or both of these issues were unsettled at the time of remand." *Id*. at 210.

defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. *Id*.

of parallel state proceedings and [to] continue to squarely address any alleged novelty of state law issues." *Id*. at 211.

Following the Third Circuit's decision, Defendant filed the present Motion to Dismiss and Further Opposition to Plaintiff's Motion to Remand.  ECF No. 39.

## II.   STANDARD OF REVIEW

### A.  Motion to Remand

Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter.  *Entrekin v. Fisher Scientific, Inc.*, 146 F. Supp. 2d 594, 603-04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)-(b)). Indeed, the statute provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Remand is governed by 28 U.S.C. § 1447(c), which provides that a

> motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). Importantly, "[w]hen the propriety of the removal is challenged, the burden is on the defendant to show that removal is proper, and the Court is obligated to strictly construe the removal statutes against removal, and resolve any doubts in favor of remand." *Hackensack Univ. Med. Ctr. v. Lagno*, No. 06-687, 2006 WL 3246582, at *2 (D.N.J. Nov. 3, 2006) (internal quotation and citation omitted).

### B. Motion to Dismiss

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations and citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations and citations omitted).  Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim[.]" *Id*. at 675.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679.  Third, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*.  "This means that the inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" indeed, mere consistency with liability is insufficient.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, a plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Fowler*, 578 F.3d at 213 (citation omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010), cert. denied, 565 U.S. 817 (2011).  Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits.  However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir.

2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    DISCUSSION

### A.  Motion to Remand

Plaintiff argues that this Court should remand this matter for two reasons.  First, Plaintiff asserts that this Court should exercise its discretion to abstain from hearing this declaratory judgment action because the matter solely involves state law issues, and thus implicates no federal law or interest.  Pl. Opp. Br. at 4.  Second, Plaintiff contends that this Court lacks subject matter jurisdiction because Defendant has failed to meet its burden of establishing that the amount in controversy is more than $75,000.  *Id*. at 9.  I disagree on both fronts.

#### i.    *Abstention is not warranted.*

Under the DJA, "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The permissive language of the DJA "confer[s] on federal courts unique and substantial discretion in deciding whether [in the first instance] to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  In other words, 'district courts are authorized, 'in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.'" *Reifer*, 751 F.3d at 139 (alteration in original) (quoting *Wilton*, 515 U.S. at 288).  Nevertheless, "[a] federal district court's discretion to decline jurisdiction depends on whether the complaint seeks legal or declaratory relief." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017).  In that connection, when an action contains independent legal claims, "federal courts have a virtually unflagging obligation to exercise jurisdiction." *Id.* (quotation omitted).  When, however, an action seeks only declaratory

relief, without independent legal claims, courts may decline jurisdiction if appropriate. *Id.* Importantly, it is undisputed, here, that Plaintiff seeks only declaratory relief under the DJA and asserts no other independent legal claims in its Complaint.

In considering whether to exercise jurisdiction over a declaratory action, "[c]ourts should first determine whether there is a 'parallel state proceeding,'" as "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 144). A parallel state proceeding for this purpose "is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Id.* at 284 (alteration in original) (quoting *Wilton*, 515 U.S. at 283). The Third Circuit has instructed that "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings." *Id.* at 283-84.

Nevertheless, while "the absence of pending parallel state court proceedings militates significantly in favor of exercising jurisdiction . . ., it alone does not require such an exercise." *Reifer*, 751 F.3d at 144. As such, where there is no parallel state proceeding, district courts declining jurisdiction under the DJA must still "be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.* The Third Circuit has promulgated the following, non-exhaustive list of factors to guide that analysis:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;
(6) avoidance of duplicative litigation;
(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as failing within the scope of a policy exclusion.

*Id.* at 146; *see also Kelly*, 868 F.3d at 282-83.  The Third Circuit has instructed district courts to give "meaningful consideration" to any relevant factors, and that some factors may be weighed heavier than others based on the circumstances of each case.  *Reifer*, 751 F.3d at 146.  The circuit court has also advised that "there will be situations in which district courts must consult and address other relevant law or considerations."  *Id.*

Here, "[i]t is undisputed that there is no parallel state court proceeding between the parties." *Mark Daniel*, 495 F. Supp. 3d at 333.  This fact "militates significantly in favor of exercising jurisdiction," *Kelly*, 868 F.3d at 282, and thus in order to decline jurisdiction, the Court must undertake a "rigorous" inquiry to ensure that "the lack of pending parallel state proceedings is outweighed by opposing factors," *Reifer*, 751 F.3d at 144.  In that connection, as this Court previously stated, only the third and fifth *Reifer* factors are relevant to the Court's analysis in this matter.  *See Mark Daniel*, 495 F. Supp. 3d at 334 n.5 (noting that the "remaining *Reifer* factors do not significantly impact the Court's analysis.").  Therefore, to decline jurisdiction, this Court must find that these two factors outweigh the significant fact that there is no parallel state court proceeding between the parties.  I find that these two factors are insufficient to decline jurisdiction.

As an initial matter, the fifth factor, which is "a general policy of restraint when the same issues are pending in a state court," does not weigh in favor of declining jurisdiction.  The *DiAnoia's Eatery* court explained that the fifth factor is only applicable when the same issues pending in state court are *between the same parties*, "not when the 'same issues' are merely the

same legal questions pending in any state proceeding." 10 F.4th at 206. As already explained *supra*, it is undisputed that the parties are not litigating a matter with similar issues in state court. As such, this factor is not applicable.

Under the third *Reifer* factor, I must consider "the public's interest in settlement of the uncertainty of obligation." *Reifer*, 751 F.3d at 146. Generally, "there is no federal interest involved in [cases] concern[ing] purely questions of state law." *U.S. Liab. Ins. Co. v. Singer*, No. 16-887, 2016 WL 5858984, at *5 (D.N.J. Oct. 6, 2016) (alteration in original) (quoting *1100 Adams St. Condo. Ass'n v. Mt. Hawley Ins. Co.*, No. 14-2203, 2014 WL 5285466 (D.N.J. Oct. 15, 2014)). In that connection, the Third Circuit has instructed that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134-35 (3d Cir. 2000)). However, the Third Circuit has also explained that "federal courts sitting in diversity have 'the usual interest in the fair adjudication of legal disputes,'" *Dianoia's Eatery*, 10 F.4th at 207 (quoting *Kelly*, 868 F.3d at 288), and has counseled district courts exercising discretion under the DJA to "squarely address the alleged novelty of . . . state law claims" to determine whether the dispute is, indeed, "uncertain or undetermined" such that it would be in the public interest to remand the matter to state court. *Dianoia's Eatery*, 10 F.4th at 207 (quoting *Reifer*, 751 F.3d at 148-49).

As noted *supra*, the Third Circuit determined that two of the four novel issues identified by this Court were not novel, and thus did not weigh in favor of abstention, and the other two were "possibly" novel. *See Dianoia's Eatery*, 10 F.4th at 210 ("It is possible that one or both of these issues were unsettled at the time of remand.") The two possibly novel issues were: (1) whether INC suffered any physical loss or damage from a government order; and (2) whether INC met the

requirements for civil authority coverage under the Policy.  However, since the Third Circuit decision, both state and federal courts have decided cases squarely addressing these issues.

The question of whether a government order can cause physical loss has been considered by a number of state and federal New Jersey trial courts since remand.  *See, e.g.*, Leming Decl., Ex. B, *FAFB LLC v. Blackboard Ins. Co.*, MER L 000892-20 (N.J. Super. Ct. Law Div. Oct. 30, 2020) ("[E]ven assuming that . . . all of plaintiff's allegations [are] true, this would only establish a loss of use of property and there's no coverage under New Jersey Law for loss of use . . . standing alone without some physical impact on the property[.]"); *see, e.g.*, *7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 WL 1153147, at *2 (D.N.J. Mar. 26, 2021) ("Here, Plaintiff has not alleged any facts that support a showing that its property was physically damaged.  Instead, Plaintiff pleads that the Stay-At-Home Orders and resultant actions by the government and others forced the cessation of the minor league baseball season and caused Plaintiff to lose income and incur expenses."); *Ralph Lauren Corp. v. Factory Mutual Ins. Co.*, No. 20-10167, 2021 WL 1904739, at *3 (D.N.J. May 21, 2021) ("Plaintiff's pleading contains no specific allegations regarding physical loss or damage to its covered properties, surrounding properties, or an "immediately impending" risk of the same.  To the extent Plaintiff maintains that the Stay-at-Home Orders and occupancy restrictions forced the shuttering of its stores and reduced operations because of COVID-19 or an "imminent threat" of COVID-19, these allegations are insufficient." (internal citations omitted)); *Marilyn's Kids, Inc. v. Continental Casualty Co.*, No. 20-8641, 2021 WL 4488598, at *5 (D.N.J. June 30, 2021) ("To the extent that Plaintiff may argue the executive orders—not COVID-19—caused 'physical loss,' that argument also fails."); *see also Cammie's Spectacular Salon v. Mid-Century Ins. Co.*, No. 20-12324, 2022 WL 488945, at *3 (D.N.J. Feb. 17, 2022) (explaining in relation to motion to amend that "[f]or insurance coverage purposes,

COVID-19 stay-at-home orders do not cause 'direct physical loss of or damage to property.'"). New Jersey federal courts have also considered whether similar insurance policies during the pandemic have met the requirements for civil authority coverage. *See, e.g.*, *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *7 (D.N.J. Feb. 10, 2021) (finding civil authority coverage does not apply because virus exclusion precludes coverage); *Beniak Enterprises, Inc. v. Indemnity Ins. Co. of North Am.*, 556 F. Supp. 3d 437, 444 (D.N.J. 2021) (explaining that because the closure orders were intended to prevent the spread of COVID-19, "[i]t necessarily follows . . . that the Closure Orders were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion, and are therefore not a Covered Cause of Loss and unable to trigger the Civil Authority coverage." (internal quotations omitted)).

Although Plaintiff argues that these issues are unsettled because no appellate state court cases have ruled on these two narrow issues, such a fact does not necessitate remand. *See Count Basie Theatre Inc. v. Zurch Am. Ins. Co.*, No. 21-00615, 2021 WL 3732903, at *6 (D.N.J. Aug. 24, 2021) ("The mere fact that no state court has specifically ruled on the issue before this Court does not mean that the state law is so unsettled that this Court should abstain from deciding this case." (quoting *BCB Bancorp. v. Progressive Cas. Ins. Co.*, No. 13-1261, 2014 WL 2434193, at *8 (D.N.J. May 28, 2014))). While Plaintiff contends that these issues are novel because there are no binding state court cases on the matter, such an assertion incorrectly assumes that the two "possible" novel questions are even relevant to the disposition of this matter. Since the filing of the instant complaint, a flurry of cases have decided COVID-19 insurance coverage disputes. Indeed, this Court has had the occasion to decide a handful of these matters. In that regard, courts have had the opportunity to decide salient issues related to COVID-19 insurance policies. And, based on the wealth of cases, there are so few decisions addressing these questions because they

typically turn on whether the "virus exclusion barred coverage, [and for this reason,] most courts in this District have declined to address the question[s] presented here [in detail]: what constitutes 'direct physical loss or damage to' property" and whether civil authority coverage applies. *Marilyn's Kids, Inc.*, 2021 WL 4488598, at *3 (deciding physical loss question only because contract did not contain a virus exclusion); *see Body Physics v. Nationwide Insurance*, 524 F. Supp. 3d 372, 381 (D.N.J. 2021) ("However, because the Virus Exclusion applies and is legally enforceable, the Court need not entertain the question of whether Plaintiff's alleged losses constitute 'direct physical loss . . . or damage.'"); *Delaware Valley Plumbing Supply, Inc. v. Merchants Mutual Insurance Company*, 519 F. Supp. 3d 178, 182 (D.N.J. 2021) (noting that while the term direct physical loss is subject to multiple interpretations in New Jersey, "it is unnecessary to address" such an argument "because the Virus Exclusion clearly applies and bars coverage."). Indeed, here, the merits will also be decided based on whether the Virus Exclusion applies.  As the Third Circuit opined, without ruling, on Defendant's claim:

> [T]he existence of the anti-concurrent causation clause would suggest that the "key" question identified by the District Court—"whether Plaintiff's business losses were caused by the presence of the COVID-19 virus or, rather, caused by the Executive Orders which prompted the closure of Plaintiff's restaurant"—is not so important in light of the virus exclusion. The anti-concurrent causation language turns the exclusion inquiry into a question of whether the government orders themselves were caused by the COVID-19 virus, not whether the orders were the superseding cause of any loss.

*DiAnoia's Eatery*, 10 F.4th at 209 n.12.  As such, because this case will turn on whether the Virus Exclusion applies, there is not a strong public interest in the settlement of these issues.  For these reasons, the third factor does not weigh in favor of declining jurisdiction.

    ii.    *This Court has subject matter jurisdiction.*

Plaintiff argues that Defendant has failed to meet its burden of establishing that there is more than the $75,000 in controversy.  Pl. Opp. Br. at 9.  Specifically, Plaintiff asserts that the

Notice of Removal's the amount in controversy allegation was conclusory.  Motion for Remand at 3; Pl. Opp. Br. at 9.  Defendant responds that this is irrelevant because Plaintiff's Complaint failed to include a specific monetary demand, and therefore Defendant's Notice of Removal only needed to include a plausible allegation that the amount in controversy exceeds $75,000. Furthermore, even if Defendant's allegation was not plausible, Defendant argues that it submitted adequate proof that the amount in controversy is more than $75,000.[4]

In cases where subject matter jurisdiction is based on diversity jurisdiction, *see* 28 U.S.C. § 1332, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  "A party asserting federal jurisdiction in a removal case bears the burden of showing that the case is properly before the federal court."  *Judon v. Travelers Property Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (internal quotations omitted).

In removal cases based on diversity jurisdiction, the sum demanded by the plaintiff in good faith shall be deemed to be the amount in controversy.  28 U.S.C. § 1446(c)(2); *see Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 398 (3d Cir. 2004) (noting that in cases removed to federal court, "determining the amount in controversy begins with a reading of the complaint filed in state court.").  However, if the complaint fails to allege a specific amount because "State practice

---

[4] The Court noted in its prior opinion that another way courts "determine whether the jurisdictional amount in controversy has been met" is to "look to the value of the insurance policy and the damages alleged in the underlying case[.]"  *Mark Daniel*, 495 F. Supp. 3d at 332 n.4 (quoting *Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-3577, 2018 WL 4676038, at *6 (D.N.J. Sept. 28, 2018)).  Here, the Policy states that Defendant will pay for the "actual loss" of business income sustained due to the necessary suspension of operations, and the "necessary Extra Expense you incur" during the period of restoration that would not have occurred had there been no direct physical loss or damage to property.  *See* Leming Decl. Ex. A at A4-A5.  The parties do not dispute that these amounts can be over $75,000.

. . . does not permit demand for a specific sum," as is the case in New Jersey,[5] "the notice of removal may assert the amount in controversy" so long as "the district court finds, by the preponderance of the evidence, that the amount in controversy [asserted in the notice of removal] exceeds" \$75,000.  28 U.S.C. § 1446(c)(2)(A)-(B).[6]

Even if that party's notice of removal fails to plausibly allege the proper amount in controversy, the court "may [also] consider the Complaint . . . *and* the parties' submissions related to Plaintiff's motion to remand." *Vaccaro v. Amazon.com.dedc, LLC*, No. 18-11852, 2019 WL 1149783, at *4 n.6 (D.N.J. Mar. 13, 2019); *see Willingham v. Morgan,* 395 U.S. 402, 407 n.3, 89 S.Ct. 1813, 1816 n. 3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits. *See* 28 U.S.C. § 1653."); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2001) (stating that jurisdictional facts required to support removal may be found in later-filed affidavits).

Defendant alleges in its Notice of Removal that the "amount in controversy in this action exceeds \$75,000 because Plaintiff seeks a declaration that it is entitled to coverage for any loss and damage resulting from the closure of its restaurant, which, upon information and belief, would exceed \$75,00."  Notice of Removal ¶ 10.  Even if Defendant's amount in controversy allegation

---

[5] In "New Jersey state courts, a plaintiff may not request a specific amount of damages in the complaint." *Estrumil LLC v. American Automobile Ins. Co.*, No. 20-15259, 2021 WL 2073953, at *2 (D.N.J. Feb. 9, 2021) (citing N.J. Ct. R. 4:5-2).

[6] Notably, the removal notice is subject to the removal statute's general requirement that a notice of removal must contain at least a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 89 ("[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.' 28 U.S.C. § 1446(a). By design, 28 U.S.C. § 1446(a) tracks the general pleading requirements of Rule 8(a)[.]").

was conclusory, I find that Defendant's affidavits, in combination with the Complaint, provide enough evidence to determine that the amount in controversy is satisfied.

According to the Complaint, on March 21, 2020, Governor Murphy issued Executive Order 107, which ordered New Jersey residents to stay at home, and limited restaurants to offering food delivery and/or take-out services. Compl. ¶ 13. Ten days later, Plaintiff's Statement of Operations, as submitted by Defendant, indicates that as of March 31, 2020, Plaintiff had net losses of $35,629 for the year.[7]  ECF No. 14-1, Rinehimer Decl., Ex. B.  Notably, Plaintiff specifically blames the Executive Order for its losses, stating in its Complaint that it "was doing substantial business at the time it was forced to close its business to the public." Compl. ¶ 19.  And, "[a]s a result of the [Executive Order], Plaintiff c[ould not] use the restaurant space and was forced to close." *Id*. Plaintiff explains that because of the Executive Order, it "suffered a substantial loss of business and income[.]" *Id*.

Given the amount of losses in the first ten days after the Executive Order, and considering that the amount in controversy requirement "is measured as of the date of removal," *Meritcare Inc. v. St. Paul Mercy Ins. Co.*, 166 F.3d 214 (3d Cir. 1999), which was June 2, 2020, it is clear that Plaintiff's losses were likely well over the $75,000 requirement by that date.  Separately, the Court notes that while it is not Plaintiff's burden, Plaintiff did not submit evidence to negate, or even argue, that the amount in controversy is under $75,000.  Rather, Plaintiff merely argues that Defendant has not met its burden of showing that the amount is over $75,000.  For these reasons, I find that, by a preponderance of the evidence, Defendant has proved that the amount in controversy is over $75,000.

---

[7] In 2019, Plaintiff reported annual revenue of $1,548,052.00, which is $129,004.00 per month. Rinehimer Decl. ¶ 4.

**B. Motion to Dismiss**

Defendant argues that the Complaint should be dismissed because Plaintiff has failed to plausibly allege a right to recovery under the Policy.  Def. Br. at 23.  According to Defendant, Plaintiff may only recover from Defendant if Plaintiff's losses were due to a "Covered Cause of Loss."  *Id*.; *see* Leming Decl., Ex. A at A3-A7.  Defendant asserts that Plaintiff's losses, including business income, extra expense, and civil authority coverage, fall squarely within the Virus Exclusion, which precludes insurance coverage when the "loss or damage is caused directly or *indirectly* by . . . [a]ny virus[.]"  *Id*. at 23-24 (quoting Leming Decl., Ex. A at A7-A8) (emphasis added).  Plaintiff contends that the Virus Exclusion does not apply because Governor Murphy's COVID-19 Executive Orders related to business closures, and not the presence of COVID-19 on their property, were the proximate cause of Plaintiff's losses.  Furthermore, Plaintiff argues that Defendant is barred from asserting the Virus Exclusion based on the doctrine of regulatory estoppel, because the insurance industry trade groups misrepresented the meaning of the Virus Exclusion to regulators.

Here, consistent with the weight of authority, I find that the Virus Exclusion applies to Plaintiff's losses.  First, the plain text of the Policy renders Plaintiff's proximate cause argument invalid.  In New Jersey, the proximate cause doctrine, also known as the "Appleman Rule," dictates that "if an exclusion bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the efficient proximate cause of the loss.'"  *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007).  As such, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss."  *N.J. Transit Corp. v. Certain*

*Underwriters at Lloyd's London*, 461 N.J. Super. 440, 460-61 (App. Div. 2019) (quoting *Auto Lenders Acceptance Co. v. Gentillini Ford, Inc.*, 181 N.J. 245, 257–58 (2004)).  Conversely, a loss may also be covered where the covered cause "ends the sequence of events leading to the loss." *Flomerfelt v. Cardiello*, 202 N.J. 432, 447 (2010).  Ultimately, however, the pertinent question is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss.  *See Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188, 191 (App. Div. 1979).

Plaintiff maintains that the Governor's Orders, not the virus, were the proximate cause of the loss.  Compl. ¶ 20.  But, the Policy contains an anti-concurrent clause.  The Policy's Virus Exclusion excludes any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Leming Decl., Ex. A at A7-8.  The exclusion also states that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id*. at A7.  This latter clause is known as an "anti-concurrent" clause, which is exclusionary language designed to avoid the proximate cause doctrine.  *N&S Rest. LLC v. Cumberland Mutual Fire Ins. Co.*, 499 F. Supp. 3d 74, 79 (D.N.J. 2020).  Such clauses "exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured" and are enforceable under New Jersey law.  *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at \*6 (D.N.J. Mar. 25, 2021) (quoting *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 461 (App. Div. 2019) (internal quotation marks omitted)); *see also N&S Restaurant*, 499 F. Supp. 3d at 80 (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp.2d 349, 353 (D.N.J. 1999)); *Lam Investment Research, LLC v. Pub. Serv. Mutual Ins. Co.*, No. 12-5576, 2016 WL 6634931, at \*5

(D.N.J. Apr. 1, 2016). The inclusion of an anti-concurrent clause in the Virus Exclusion means that a policy "does not provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *N&S Restaurant*, 499 F. Supp. 3d at 80.  Here, the anti-concurrent clause in the Virus Exclusion states that "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Leming Decl., Ex. A at A7-8.  Governor Murphy's Executive Orders were in direct response to the COVID-19 virus, and thus, the virus was a contributing cause to Plaintiffs' losses.  For this reason, the plain text of the Policy precludes Plaintiff from recovering any losses caused by COVID-19 or the Executive Orders.  *See, e.g.*, *JRJ Hospitality, Inc. v. Twin City Fire Ins. Co.*, No. 20-13095, 2021 WL 3561356, at *6 (D.N.J. Aug. 12, 2021) (finding insurance policy with virus exclusion and anti-concurrent clause did "not cover any claim for losses caused by the COVID-19 virus and the ensuing Executive Orders."); *N&S Rest*, 499 F. Supp. 3d at 81 (holding that virus exclusion and anti-concurrent clause bar coverage); *Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *5 (D.N.J. Mar. 18, 2021) (same).

Plaintiff also asserts the Defendant cannot rely on the Virus Exclusion under the doctrine of regulatory estoppel.  Plaintiff argues that in 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), engaged in a nationwide effort to seek approval of the Virus Exclusion. Pl. Opp. Br. at 20-21.  According to Plaintiff, ISO and AAIS misrepresented to regulators that disease-causing agents were never intended to be included in certain insurance policies.  *Id*.  In Plaintiff's view, this false representation narrowed the scope of coverage without a commensurate reduction in premiums.

As an initial matter, this argument fails on procedural grounds, since Plaintiff failed to allege anything related to regulatory estoppel in its Complaint.  "To plead a claim for regulatory estoppel, a plaintiff must allege an inconsistency between the defendant's interpretation of an exclusionary provision used to deny coverage and the interpretation the defendant previously advanced to state regulators when seeking approval for that provision."  *Cedar Run Orthodontics, P.A. v. Sentinel Ins. Co., Ltd.*, No. 20-08156, 2021 WL 5083814, at *5 (D.N.J. Nov. 1, 2021) (citing *Benamax Ice, LLC v. Merchant Mut. Ins. Co.*, 529 F. Supp. 3d 350, 358 (D.N.J 2021) ("[A] plaintiff must allege: (1) that the insurance industry asserted one meaning and scope of a proposed exclusion to state regulatory authorities; and (2) that the industry subsequently argued for a much narrower interpretation when seeking to enforce the exclusion in litigation.")); *see Scott v. Cohen*, 528 Fed. App'x 150, 152 (3d Cir. 2013) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989))).  Because Plaintiff did not plead such a claim, "I need not consider these new allegations as it is well established that a plaintiff may not use its opposition to a dispositive motion an opportunity to amend the complaint."  *Garmany*, 2021 WL 1040490, at *9 (rejecting AAIS and ISO regulatory estoppel argument due to lack of allegations in complaint) (citing *Scott v. Cohen*, 528 F. App'x at 152).

Regardless, Plaintiff's regulatory estoppel claim is meritless.  Plaintiff has failed to demonstrate any inconsistency between insurance industry representations to regulators and Defendant's interpretation of the Virus Exclusion.  In 2006, for example, ISO explained to state regulators that "[w]hile property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of [a] pandemic . . . raises the concern that insurers . . . may face claims in which there are efforts to expand coverage and to create sources

of recovery for such losses, contrary to policy intent." Pl. Opp. Br., Ex. A at 11. "In light of these concerns," ISO "present[ed] an exclusion relating to contamination by disease-causing viruses[.]" *Id*. These statements are consistent with Defendant's interpretation of the Virus Exclusion. ISO maintained that property policies did not cover disease-causing agents and presented an exclusion clarifying that position, and likewise here, Defendant's position is that the Virus Exclusion bars coverage due to disease-causing agents. Thus, "the claim's denial is premised upon the very same reasons advanced to justify approval of the virus exclusion in the first place." *Humans & Resources, LLC, D/B/A Cadence Restaurant v. Firstline Nat'l Ins. Co.*, No. 20-2152, 2021 WL 75775 (E.D. Pa. Jan. 8, 2021). Notably, "[c]ourts in this district" that have analyzed the exact same industry statements to regulators "have rejected virtually identical regulatory estoppel claims regarding virus exclusions in the COVID-19 context" because there is no inconsistency between the insurance industry's statements and how insurance companies, like Defendant, have applied it in practice. *Cedar Run Orthodontics*, 2021 WL 5083814, at *5 (rejecting same AAIS and ISO claim); *see, e.g.*, *Delaware Valley Plumbing Supply, Inc.*, 519 F. Supp. 3d at 182 ("The industry filings cited by Plaintiff make clear that the Virus Exclusion clause would bar coverage for loss or damages caused by a virus like COVID-19. Plaintiff's opposition brief therefore entirely fails to demonstrate or adequately allege any inconsistency between this reasoning advanced to justify the approval of such Virus Exclusion clauses and the interpretation of the Virus Exclusion clause relied upon by Defendant in this case."); *Garmany*, 2021 WL 1040490, at *9 n.6 ("I further note that this is not the first case in which a plaintiff has raised the issue of regulatory estoppel based [on] the AAIS and ISO filings regarding the virus exclusion. Indeed, federal courts that have considered the issue have uniformly rejected claims that virus exclusions in commercial insurance policies are void under principles of regulatory estoppel); *Blue Devil LLC v. ACE Prop. & Cas.*

22

*Ins. Co.*, No. 20-12480, 2021 WL 3930710, at *6-7 (D.N.J. Sept. 2, 2021) (Discussing AAIS and ISO claim and stating that Plaintiffs "have entirely failed to point to a [ ] misrepresentation regarding the scope of the Virus Exclusion, and to demonstrate how the interpretation advanced by Defendant is inconsistent with prior representations made by the insurance industry to regulators[.]'"). For these reasons, it is clear that regulatory estoppel does not apply.

In light of the foregoing, Defendant's motion to dismiss is granted.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is **DENIED**, and Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**, because as a matter of law, there is no additional discovery or amended pleadings that will change the Court's reading of the plain language of the Policy.

Date: June 16, 2022                                    /s/ Freda L. Wolfson
                                                      Freda L. Wolfson
                                                      U.S. Chief District Judge